## UNITED STATES DISTRICT COURT
### District of Kansas
(Wichita Docket)

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

    **v.**                    **CASE NO. 6:21-cr-10073-EFM**

**MICHAEL R. CAPPS,**

        **Defendant.**

# INDICTMENT

**THE GRAND JURY CHARGES**:

At all times material to this Indictment:

### INTRODUCTION

1.      Michael R. Capps is the owner, and or majority owner, of Midwest Business Groups, LLC (Midwest); Krivacy, LLC (Krivacy); and a member of the Fourth and Long Foundation (Fourth & Long).

2.      Michael R. Capps submitted, and caused to be submitted, on behalf of Midwest, Krivacy, and Fourth & Long, false and fraudulent applications to the United States Small Business Administration (SBA) for Economic Injury Disaster Loans (EIDL) for each of said companies.  Midwest received an EIDL loan in the approximate amount of

$114,700.  Krivacy received an EIDL loan in the approximate amount of $150,000. And, Fourth & Long received an EIDL loan in the approximate amount of $85,000.

3.    Michael R. Capps submitted, and caused to be submitted, on behalf of Midwest a false and fraudulent application to Emprise Bank for a Payroll Protection Program (PPP) loan.  Midwest received a PPP loan in the approximate amount of $80,500.

4.    Michael R. Capps submitted, and caused to the submitted, on behalf of Midwest and Krivacy false and fraudulent applications to the Kansas Department of Commerce for a Small Business Working Capital Grant, the funds of which were made available to the State of Kansas from the Federal Government in response to the COVID-19 pandemic.  A grant of $20,000 was given to Midwest and a grant of $20,000 was given to Krivacy.

5.    Michael R. Capps submitted, and caused to be submitted, on behalf of Midwest and Krivacy a false and fraudulent application to Sedgwick County for a Sedgwick Cares grant, and a grant of $5,000 was given to Midwest.

6.    The SBA is an executive-branch agency of the United States government.

7.    Emprise Bank is a federally insured financial institution as defined in 18 U.S.C. § 20, and a lender in the PPP program.

## Background on the Paycheck Protection Program (PPP)

8.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020 designed to provide emergency financial assistance to the millions of Americans suffering from the economic consequences of COVID-19.

9.      The CARES Act authorized up to $659 billion in forgivable loans to small businesses for employee retention and certain business expenses through a program called the Paycheck Protection Program ("PPP").  The program authorizes qualifying small businesses and other organizations to receive loans that are 100 percent guaranteed by the Small Business Administration ("SBA"), and the full principal amount of the loans may qualify for loan forgiveness.  The business must use PPP loan proceeds on payroll costs, mortgage interest, rent, and utilities.  Initially, the program allowed the principal to be forgiven if the business spent the loan proceeds on qualifying expenses within eight weeks of loan issuance and used at least 75 percent of the loan for payroll.  On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 went into effect.  This law extended the period from eight weeks to 24 weeks that the loan proceeds had to be spent and reduced the requirement that the loan proceeds be spent on payroll from 75 percent to 60 percent.

10.     A business's number of employees and average monthly payroll costs for the twelve month period prior to the declared Coronavirus disaster determined the amount of PPP funding that the business could receive.  Businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.  To qualify for eligibility, businesses applying for a PPP loan needed to be in operation as of February 15, 2020.

11.     The SBA administers the program and has authority over all PPP loans.  However, approved lenders (usually private banks and credit unions) issue the loans.  The

banks/lenders receive and process PPP applications and supporting documentation, then make the loans using the bank's/lender's own funds.

**Background on Economic Injury Disaster Loans (EIDL)**

12.    An Economic Injury Disaster Loan ("EIDL") is an SBA-administered loan designed to provide assistance to small businesses that suffer substantial economic injury as a result of a declared disaster.  An EIDL helps businesses meet necessary financial obligations that could have been met had the disaster not occurred.  It provides relief from economic injury that the disaster caused and permits businesses to maintain a reasonable working capital position during the period that the disaster affected.

13.    EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal.  The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including information as to the gross revenues for the 12 months prior to the disaster; the cost of goods sold; and information as to any criminal history of the business owner.  Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

14.    In March 2020, due to the COVID-19 pandemic, the SBA issued an EIDL declaration.  The declaration made EIDL loans available nationwide to small businesses to help alleviate economic injury caused by COVID-19.  EIDL loans are usually limited to a

maximum amount of $2 million.  However, during the COVID-19 pandemic, EIDL loans were limited for a period of time to $150,000.

### Background on Kansas Department of Commerce
### Small Business Working Capital Grant

15.    The Kansas Department of Commerce created the Small Business Working Capital Grant program by which eligible companies could receive up to a $20,000.00 grant to be used as working capital.  These State of Kansas received the money for said grant program from the federal government as part of the Coronavirus Aid, Relief and Economic Stability (CARES) Act.  Recipients of the Small Business Working Capital Grant are to grant proceeds solely as working capital.

### Background on the Sedgwick County "Sedgwick Cares" Grant

16.    In response to the COVID-19 pandemic, Sedgwick County received funding from the federal government through the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  Sedgwick County established the Sedgwick Cares Grant to provide businesses with a grant of up to $5,000 which could be used to reimburse necessary spending due to the coronavirus that occurred between March 1, 2020 and December 30, 2020.  Federal guidelines require that the grant recipient must use the grant proceeds for COVID-19 related matters, and the funds could only be spent on items outside of the organization's normal budget, and could not be used to make up lost revenue.  Eligible costs included: Payroll costs for staff substantially dedicated to COVID-19 response activities; Personal Protective Equipment (PPE), such as hand sanitizer, gloves, and

cleaning supplies; thermometers and other screening equipment; computers, phones, webcams and other equipment to accommodate teleworking.

## COUNT 1

### FALSE STATEMENT TO A BANK FOR A PPP LOAN
### [18 U.S.C. 1014]

17.     The Grand Jury repleads and realleges Paragraphs 1 through 10.

18.     On or about May 4, 2020, in the District of Kansas, the defendant,

## MICHAEL R. CAPPS,

knowingly made a false statement or report for the purpose of influencing the action of Emprise Bank, an institution whose deposits are insured by the Federal Deposit Insurance Corporation, in connection with an application for loan through the Paycheck Protection Program (PPP), in that the defendant represented that in 2019 **Midwest Business Group, LLC** (Midwest) had eight employees with an average monthly payroll of $32,715.00, and further represented that Midwest, had PPP eligible payroll costs in 2019 of $380,000, when in truth and in fact, as the defendant well knew, that Midwest, did not have eight employees, had not paid eligible payroll costs of $380,000 in 2019, and that its average monthly payroll in 2019 was not $32,715.00.

The above being in violation of Title 18, United States Code, §§ 1014 and 2.

## COUNT 2

### BANK FRAUD – PPP LOAN
### [18 U.S.C. §1344(2)]

19.     The Grand Jury repleads and realleges paragraphs 1 through 10.

20.     On or about May 4, 2020, in the District of Kansas, the defendant,

**MICHAEL R. CAPPS,**

did knowingly execute a scheme to obtain any of the moneys, funds, assets, securities and

other property owned, or under the control of Emprise Bank, a financial institution  insured

by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent

pretenses and representations, to wit: the defendant, on behalf of Midwest, signed and

submitted a Paycheck Protection Program Borrower Application Form to Emprise Bank,

in which the defendant falsely represented Midwest's 2019 Average Monthly Payroll, the

gross wages paid by Midwest to its employees in 2019 and that it had eight employees in

2019, thereby causing Emprise Bank to loan Midwest, the sum of $80,500.00.

The above acts were in violation of Title 18, United States Code, §§ 1344(2) and 2.

## COUNT 3

### FALSE STATEMENT TO THE SBA for EID LOAN
### [18 U.S.C. 1001(a)]

21.     The Grand Jury repleads and realleges paragraphs 1 through 6 and 11 through

13.

22.     On or about March 31, 2020, the defendant,

**MICHAEL R. CAPPS,**

did willfully and knowingly make a materially false, fictious, and fraudulent statement and

representation in a matter within the jurisdiction of the executive branch of the Government

of the United States statement by representing to the Small Business Administration that

Midwest had eight employees and gross revenue of $252,738 for the 12 month period

before January 31, 2020.  The statements and representations were false because Michael

R. Capps, then and there knew that Midwest did not during the 12 month period before January 31, 2020, have eight employees or $252,738 in gross revenue.

The above representations were in violation of 18 U.S.C. 1001(a) and 18 U.S.C. § 2.

## COUNT 4

### FALSE STATEMENT TO THE SBA for EIDL LOAN
### [18 U.S.C. 1001(a)]

23.     The Grand Jury repleads and realleges paragraphs 1 through 6 and 11 through 13.

24.     On or about March 31, 2020, the defendant,

## MICHAEL R. CAPPS,

did willfully and knowingly make a materially false, fictious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States statement by representing to the Small Business Administration that Krivacy, LLC (Krivacy) had eighteen employees and gross revenue of $728,520 for the 12 month period before January 31, 2020.  The statements and representations were false because Michael R. Capps, then and there knew that Krivacy, did not during the 12 month period before January 31, 2020, have eighteen employees or $728,520 in gross revenue.

The above representations were in violation of 18 U.S.C. 1001(a) and 18 U.S.C. § 2.

## COUNT 5

**FALSE STATEMENT TO THE SBA for EIDL LOAN**
**[18 U.S.C. 1001(a)]**

25.    The Grand Jury repleads and realleges paragraphs 1 through 6 and 11 through 13.

26.    On or about March 31, 2020, the defendant,

**MICHAEL R. CAPPS,**

did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States statement by representing to the Small Business Administration that Fourth and Long Foundation (Fourth and Long) had twelve employees and gross revenue of $285,000 for the 12 month period before January 31, 2020.   The statements and representations were false because Michael R. Capps, then and there knew that Fourth and Long did not, during the 12 month period before January 31, 2020, have twelve employees or $285,00 in gross revenue.

The above representations were in violation of 18 U.S.C. 1001(a) and 18 U.S.C. § 2.

## COUNTS 6 - 8

**WIRE FRAUD, SBA**
**[18 U.S.C. 1343]**

27.     The Grand Jury repleads and realleges paragraphs 1 through 6 and 11 through 13.

28.     From on or about March 31, 2020, in the District of Kansas, the defendant,

**MICHAEL R. CAPPS,**

having devised and intending to devise, a scheme to and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, did transmit, and caused to be transmitted by means of wire communications, in interstate commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme, to wit: on or about the dates set forth below, the defendant transmitted, or caused to be transmitted, through interstate wire transmissions,

- applications for Economic Injury Disaster Loans (EIDL) to the United States Small Business Administration (SBA), on behalf of the Midwest, Krivacy and Fourth and Long, in which the defendant made materially false and fraudulent representations about: the number of employees employed by Midwest, Krivacy and Fourth and Long in 2019, and the annual gross revenues for each such company during the twelve months prior to January 31, 2020,

- thereby causing the SBA to transmit, in interstate commerce, via Automated Clearing House, money to the Midwest, Krivacy and Fourth and Long's bank accounts in Kansas, as identified below.

| Count | Date of Application | Company | Amount of Money to the Company | Date of Payment |
|---|---|---|---|---|
| 6 | 3-31-20 | Midwest Business Group, LLC | $114,700 | 7-21-20 |
| 7 | 3-31-20 | Krivacy, LLC | $149,900 | 5-21-20 |
| 8 | 3-31-20 | Fourth & Long Foundation | $84,400 | 5-21-20 |

The above acts were in violation of 18 U.S.C. §§1343 and 2.

## COUNTS 9 - 10

**Wire Fraud, Kansas Department of Commerce**
**[18 U.S.C. 1343]**

29.     On or about the dates set forth below, in the District of Kansas, the defendant,

## MICHAEL R. CAPPS,

having devised and intending to devise, a scheme to and for obtaining money by means of

materially false and fraudulent pretenses, representations, and promises, did transmit, and

caused to be transmitted by means of wire communications, in interstate commerce,

writings, signs, signals, pictures and sounds for the purpose of executing such scheme, to

wit: on or about the dates set forth below, the defendant transmitted, or caused to be

transmitted, through interstate wire transmissions, applications for Small Business

Working Capital Grants to the Kansas Department of Commerce (KDOC), on behalf of the

Midwest and Krivacy, in which the defendant made materially false and fraudulent

representations about:

- the annual gross revenue for each company during 2019;

- the gross revenues for each for the period of January 1, 2019 – June 30, 2019;

- the gross revenues for each company during the period of January 1, 2020 – June 30, 2020;

- Midwest and Krivacy's annual payroll in 2019;

- Midwest and Krivacy's average wages in 2019;

- the number of employees employed by the Midwest and Kricacy in 2019; and

- the annual gross revenue for Midwest and Kricayc during 2019,

thereby causing the KDOC to issue checks to Midwest and Krivacy in the amounts of $20,000 each, as identified below.

| Count | Date of Application | Company | Amount of Money to Company | Date of Payment |
|-------|---------------------|---------|----------------------------|-----------------|
| 9 | 8-19-20 | Midwest Business Group, LLC | $20,000 | 10-12-20 |
| 10 | 8-19-20 | Krivacy, LLC | $20,000 | 10-12-20 |

The above acts were in violation of 18 U.S.C. §§ 1343 and 2.

## COUNT 11

**Wire Fraud, Sedgwick County**
**[18 U.S.C. 1343]**

30.    On or about the 19th day of August, 2020, in the District of Kansas, the defendant,

**MICHAEL R. CAPPS,**

having devised and intending to devise, a scheme to and for obtaining money by means of materially false and fraudulent pretenses, representations, and promises, did transmit, and caused to be transmitted by means of wire communications, in interstate commerce,

writings, signs, signals, pictures and sounds for the purpose of executing such scheme, to wit: on or about the date set forth below, the defendant transmitted, or caused to be transmitted, through interstate wire transmissions, an application for a Sedgwick Cares Grant to the Division of Finance of Sedgwick County, Kansas, in which the defendant falsely and fraudulently represented that Midwest had eight employees, thereby causing Sedgwick County to issue a check to Midwest Business Group, LLC in the amount of $5,000.

The above acts were in violation of Title 18, United States Code, §§ 1343 and 2.

## **COUNTS 12 - 19**

**MONEY LAUNDERING**
**[18 U.S.C. 1957]**

31.     On or about the dates set forth below, in the District of Kansas, and elsewhere, the defendant,

**MICHAEL R. CAPPS,**

did knowingly engage, and attempt to engage, in the following monetary transactions by, through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of U.S. currency, such property having been derived from a specified unlawful activity, that is, bank fraud in violation of 18 U.S.C. 1344 and wire fraud in violation of 18 U.S.C. 1343.

| Count | Date | Transaction | Amount |
|-------|------|-------------|--------|
| 12 | 5-26-20 | 4th & Long ACH to Krivacy | $84,900 |
| 13 | 5-26-20 | Check 51221 to Pershing LLC | $100,000 |
| 14 | 5-27-20 | Krivacy ACH to Michael R. Capps | $14,519.40 |
| 15 | 5-28-20 | Check 51222 to Pershing LLC | $50,000 |
| 16 | 7-24-20 | Midwest to Krivacy | $104,314.12 |
| 17 | 7-27-20 | Check 51223 to Pershing LLC | $50,000 |
| 18 | 7-27-20 | Krivacy ACH to TD Ameritrade, Inc. | $50,000 |
| 19 | 8-12-20 | Check 51224 to Navy Federal C.U. | $30,000 |

All in violation of Title 18, United States Codes, Sections 1957 and 2.

## **FORFEITURE NOTICE**

32.     The allegations contained in paragraphs 1-31 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and 982(a)(2), and Title 28, United States Code, Section 2461(c).

33.     Upon conviction of one or more of the offenses set forth in Counts 1 and 2 of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following:

A.  A forfeiture money judgment against the defendant in an amount equal to the amount of gross proceeds obtained or derived by him from the commission of Counts 1 and 2; and

B.  Contents of account number xxxxx4457, located in Pershing LLC, account, styled as Michael R Capps, TOD DTD 04/1 1/2019, located at Pershing LLC Jersey City, New Jersey.

34.     Upon conviction of one or more of the offenses set forth in Counts 6-11 of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following:

> A.  A forfeiture money judgment against the defendant in an amount equal to the amount of gross proceeds obtained or derived by him from the commission of Counts 6-11; and

> B.  Contents of account number xxxxx4457, located in Pershing LLC, account, styled as Michael R Capps, TOD DTD 04/1 1/2019, located at Pershing LLC Jersey City, New Jersey (Counts 6-8).

35.     Upon conviction of one or more of the offenses set forth in Counts 12-17, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, or any property traceable to such property, including but not limited to, the following:

> A.  Money Judgment – A sum of money equal to the value of the property involved in Counts 12-17; and

> B.  Contents of account number xxxxx4457, located in Pershing LLC, account, styled as Michael R Capps, TOD DTD 04/1 1/2019, located at Pershing LLC Jersey City, New Jersey.

36.     If any of the property described above, as a result of any act or omission of the defendant:

> A.     cannot be located upon the exercise of due diligence;

15

B.      has been transferred or sold to, or deposited with, a third party;

C.      has been placed beyond the jurisdiction of the court;

D.      has been substantially diminished in value; or

E.      has been commingled with other property which cannot be divided

without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to Title 21, United States Code, Section 853(p).

**A TRUE BILL**

 September 8, 2021                    s/Foreperson
DATE                              FOREPERSON OF THE GRAND JURY

DUSTON J. SLINKARD
ACTING UNITED STATES ATTORNEY

By: /s/ Alan G. Metzger
ALAN G. METZGER
Assistant United States Attorney
District of Kansas
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
Ph: (316) 269-6481
Fax: (316) 269-6484
Email: alan.metzger@usdoj.gov
Ks. S. Ct. No. 10143

IT IS REQUESTED THAT THE TRIAL BE HELD IN WICHITA, KANSAS

## **PENALTIES**

**Count 1   [18 U.S.C. § 1014]**

- Punishable by a term of imprisonment of not more than thirty (30) years.  18 U.S.C. § 1014.

- A term of supervised release of not more than five (5) years.  18 U.S.C. § 3583(b)(1).

- A fine not to exceed $1,000,000.  18 U.S.C. § 1014

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

**Count 2   [18 U.S.C. § 1344(2]**

- Punishable by a term of imprisonment of not more than thirty (30) years.  18 U.S.C. § 1344.

- A term of supervised release of not more than five (5) years.  18 U.S.C. § 3583(b)(1).

- A fine not to exceed $1,000,000.  18 U.S.C. § 1344.

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

**Counts 3 through 5   [18 U.S.C. § 1001(a)]**

- Punishable by a term of imprisonment of not more than five (5) years.  18 U.S.C. § 1001(a).

- A term of supervised release of not more than three (3) years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

**Counts 6 through 11  [18 U.S.C. 1343]**

- Punishable by a term of imprisonment of not more than twenty (20) years.  18 U.S.C. § 1343.

- A term of supervised release of not more than five (5) years.  18 U.S.C. § 3583(b)(1).

- A fine not to exceed $1,000,000.  18 U.S.C. § 1343.

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).

**Counts 12 through 19  [18 U.S.C. 1957]**

- Punishable by a term of imprisonment of not more than ten (10) years.  18 U.S.C. § 1957(b).

- A term of supervised release of not more than three (3) years.  18 U.S.C. § 3583(b)(2).

- A fine not to exceed $250,000.  18 U.S.C. § 3571(b)(3).

  Alternatively, Court may impose a fine of not more than twice the amount of the criminally derived property involved in the transaction  18 U.S.C. § 1957(b)(2).

- A mandatory special assessment of $100.00.  18 U.S.C. § 3013(a)(2)(A).