## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      *Plaintiff,*

vs.

      Case No. 21-CR-10073-EFM

MICHAEL R. CAPPS,

      *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Michael Capps' Motion for a New Trial (Doc. 77). Defendant contends that the Court erred in several of its decisions at his trial such that a new trial is in the interest of justice. These purported errors are that (1) the Court declined to permit evidence or testimony as to potential forfeiture during the guilt phase of Defendant's trial, (2) the Court instructed the jury before opening statements and declined to re-instruct the jury at the close of evidence or after closing statements, and (3) the Court's Instruction 42 to the jury improperly invaded the province of the jury.

Defendant has not made his Motion within the timeframe set out by Fed. R. Crim. P. 33, and nor does he attempt to show this failure was the result of excusable neglect. The Court therefore denies the Motion on that ground. Further, even if Defendant's Motion was timely,

denial would still be in order as the Court is not persuaded it erred in the ways suggested by Defendant.

## I.        Factual and Procedural Background

The Grand Jury indicted Defendant on 19 Counts related to an alleged scheme to fraudulently obtain COVID-19 relief payments.  The Indictment contained a notice that the Government would seek forfeiture, under several different theories, of the content of Defendant's account with Pershing LLC.  Count 11 was dismissed prior to trial on a motion by the Government. Defendant proceeded to trial on the remaining 18 Counts.

Several days prior to trial, the Court held a conference with counsel from both sides regarding proposed jury instructions.  As relevant to this Motion, Defendant objected to the Court's proposed Instruction 42.  That instruction reads as follows:

> A final suggestion by the court—not technically an instruction upon the law—may assist your deliberations. The attitude of jurors at the outset of and during their deliberations is important. It is seldom productive for a juror, immediately upon entering the jury room, to make an emphatic expression of his or her opinion upon the case or to announce a determination to stand for a certain verdict. The reason is obvious: we are all human and it is difficult to recede from a position once definitely stated, even though later convinced it is unsound.

> Jurors are selected for the purpose of doing justice. This presupposes and requires deliberation--counseling together in an effort to agree. Have in mind at all times, therefore, that you are a deliberative body, selected to function as judges of the facts in a controversy involving the substantial rights of the parties. You will make a definite contribution to efficient administration of justice when and if you arrive at a just and proper verdict under the evidence which has been admitted. No one can ask more and you will not be satisfied to do less.

Defendant took issue with several aspects of this instruction.  At the conference, Defendant noted a problem with the first paragraph of Instruction 42.  He explained that if "I get [a juror] that says, 'You know what, I'm not convicting him of anything,' . . . I get a hung jury."  He therefore preferred the Court not give an instruction that, as he said, instructed "everybody [to] get along

and don't state what your position is early."  The Court overruled Defendant's objection.  In his instant Motion, Defendant focuses instead on the second paragraph, stating that the Court's instruction to the jury to "counsel[] together in an effort to agree" improperly invades the province of the jury.

It was also at this instruction conference that the Court informed counsel it planned, consistent with its recent practice, to instruct the jury prior to opening statements.  Neither side voiced an objection to this procedure at the time.

Defendant's trial commenced on December 12, 2022.  The Court instructed the jury prior to opening statements by counsel.   At this time, the Court read Instructions 1 through 40 to the jury.  These included the substantive instructions as to the elements of the offenses charged, instructions regarding the burden of proof, and the presumption of innocence.  Written copies of the instructions were provided to each juror in their notebooks.

Opening statements by counsel immediately followed the Court's reading of the instructions.   During Defendant's opening statement, the Court sustained an objection by the Government to Defense counsel's discussion of the forfeiture notice in the indictment.  Likewise, during the Government's case-in-chief, the Court did not permit Defense counsel to inquire about the Government's motives for seeking forfeiture on cross-examination of the Government's witnesses.  The Court reasoned that such an inquiry was premature during the guilt phase of Defendant's trial.

Because of pre-existing obligations on the Court's calendar, and because the trial needed to be finished prior to Christmas as lead counsel for the Government planned to retire thereafter, the trial schedule was somewhat unusual.  As noted, trial began on December 12.  It continued on

December 14 and 15.  The Court called a recess until December 19, at which time the presentation of evidence concluded, closing arguments were heard, and the case was submitted to the jury.

On December 18, Defendant moved for the court to re-read certain instructions at the close of evidence.  These were the instructions on the Government's burden of proof beyond a reasonable doubt and the Defendant's good faith defense to the fraud charges.  The Court denied Defendant's motion on the ground that it would have been error to single out specific instructions to re-read.  The Court informed Defense counsel that he was welcome to reference these instructions in his closing arguments to the jury, which he did.

Following closing arguments on December 19, the Court instructed the jury on some final logistical matters. Among these were Instruction 42, as discussed above.  The Court also instructed the jury that, upon retiring to the jury room, they should read the Court's instructions before beginning deliberations.  With these instructions, the case was fully submitted to the jury.

On December 21, the jury returned a verdict of Guilty on 12 out of the 18 Counts charged—specifically, Counts 1, 2, 4, 5, 7 through 10, and 12 through 15.  The Court then instructed the jury as to the law on forfeiture.  Counsel for both sides made their arguments as to the forfeiture issue, which was thereafter submitted to the jury.  The same day, the jury returned a special verdict finding that the funds in Defendant's Pershing account constituted proceeds obtained from the commission of the wire fraud offenses in Counts 7 and 8, and that the contents of the Pershing account were involved in the money laundering transactions in Counts 13 and 15.

Defendant moved for a new trial on January 9.  He recognizes his Motion is grounded on reasons other than newly discovered evidence, contending instead that the Court erred at several key junctures during his trial.  The Government responds that Defendant's Motion should be denied as it is both untimely and without merit.

## II.      Legal Standard

Under Rule 33(a) of the Federal Rules of Criminal Procedure, the district court is vested with the discretion to grant defendant a new trial "if the interest of justice so requires."  Any error sufficient to require a reversal on appeal is an adequate ground for granting a new trial.[1]  The defendant has the burden of proving the necessity of a new trial.[2]  "A motion for a new trial is regarded with disfavor and should only be granted with great caution."[3]

## III.      Analysis

### A.      Defendant's Motion is untimely.

A motion for a new trial grounded on reasons other than newly discovered evidence must be made within 14 days after the guilty verdict.[4]  According to Fed. R. Crim. P. 45(a)(1), days are counted by (1) excluding the day of the event that triggers the time period; (2) counting every day, including intermediate Saturdays, Sundays, and legal holidays; and (3) including the last day of the period, unless that day is a Saturday, Sunday, or legal holiday, in which case the period continues to run until the next day that falls neither on a weekend nor a holiday.  The application note to the 2009 amendment to Rule 33(b)(2) likewise states that this 14-day period includes intermediate Saturdays, Sundays, and legal holidays.

Defendant recognizes his Motion is grounded on reasons other than newly discovered evidence.  The 14-day clock therefore began to run after jury rendered its verdict on December 21.  Applying the Rule 45 rubric for computing time, Defendant's deadline to file his Motion was

---

[1] *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000).

[2] *Id.*

[3] *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999).

[4] Fed. R. Crim. P. 33(b)(2).

January 4, 2023.  Defendant did not file his Motion until five days later, on January 9, 2023.  No extension of time to file was requested or granted.

A motion under Rule 33 "may still be heard upon a showing, and subsequent finding, of excusable neglect."[5]  But Defendant does not attempt to make such a showing here.  In fact, he has not even made a timely reply to the Government's response to his Motion.  The Court is therefore not inclined to find that excusable neglect should permit an extension of time in this case.  Defendant's Motion is denied as untimely.

**B.     The Court did not err as argued by Defendant.**

Even if Defendant's Motion was timely, his substantive arguments do not persuade the Court that a new trial is in interest of justice.  The three purported errors raised by Defendant are without basis in the law, as discussed in detail below.

*1.     The Court properly excluded references to potential forfeiture from the guilt phase of Defendant's trial.*

Defendant first contends that the Court erred when it declined to permit discussion of forfeiture during the guilt phase of his trial.  He believes that this impaired his ability to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witnesses."[6]  The case against him, he insists, was nothing more than a "money grab" and the Court's exclusion of forfeiture evidence during the guilt phase of the trial impaired his ability to expose the Government's financial interest and bias.

---

[5] *United States v. Velarde*, 2014 WL 11365685, at *2 (D. Wyo. 2014), *aff'd*, 606 F. App'x 434 (10th Cir. 2015); *see* Fed. R. Crim. P. 45(b)(1)(B).

[6] *Davis v. Alaska*, 415 U.S. 308, 318 (1974).

First, the Court is not persuaded the forfeiture notice is at all probative of bias or interest on the part of any Government agent.  In a similar case before the Eleventh Circuit, the defendant argued that "the jury should have been allowed to learn that the Seminole County Sheriff's office— the agency these witnesses worked for—stood to gain a significant amount of money should Mr. Sarras be convicted and the forfeiture be successful."[7]  The court rejected this argument, stating:

> Sarras proffered no evidence showing any officer-witness had a direct or personal financial interest in the case. In fact, the officers' alleged interest in the case is best described as just the opposite: indirect, impersonal, and tenuous. This case is about child pornography—not forfeiture. To suggest that the officers were biased because the Sheriff's Office that employed them may have benefitted from a forfeiture is rank speculation. Such testimony had little, if any, probative value as to bias. Rather, such testimony had the potential to confuse the jury and distract it from the central issues, warranting the district court's exclusion.[8]

The court instead held that the district court had not abused its discretion when it refused to allow defense counsel to cross-examine law enforcement officers about the Sheriff's Office financial interest in forfeiture.[9]

None of the Government's witnesses in this case had a direct or personal financial interest in possible forfeiture.  Though the Defendant does not identify particular witnesses he believes were interested in the forfeiture, he seemed at trial to focus on the interest of the investigating FBI agent-witnesses.  These agents, while employed by the United States government, would not have personally benefitted from the forfeiture of the money in Defendant's Pershing account.  The Court agrees with the Eleventh Circuit that it would be "rank speculation" to impute bias to the FBI agents simply because the forfeited funds would have ultimately ended in federal coffers.  This

---

[7] *United States v. Sarras*, 575 F.3d 1191, 1213 (11th Cir. 2009).

[8] *Id.* at 1214.

[9] *Id.*

Court has the discretion to limit cross-examination on matters of limited or marginal relevance,[10] and it properly did so here.[11]

Additionally, the Federal Rules appear to at the very least anticipate the bifurcation of the guilt phase of the trial and the forfeiture phase.[12]   Several courts likewise generally require bifurcation of the guilt phase and forfeiture phase of a criminal trial.[13]   The Tenth Circuit has declined to impose a blanket rule requiring bifurcation,[14] but to this Court's knowledge, neither has it ever adopted Defendant's position here that it was error to bifurcate a particular trial.  It has always been this Court's practice to bifurcate the guilt phase of the trial and the forfeiture phase. The reason for this is simple; forfeiture is an aspect of punishment imposed after the defendant's conviction of a criminal offense,[15] and the jury should not consider this potential punishment in reaching its verdict as to guilt.[16]

---

[10] *United States v. DeSoto*, 950 F.2d 626, 629 (10th Cir. 1991).

[11]  *Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354, 1357 (5th Cir. 1973) ("The extent to which a witness may be cross-examined for the purposes of showing bias rests on the sound discretion of the trial judge.").

[12] *See* Fed. R. Crim. P. 32.2(b)(1)(A) ("As soon as practical *after a verdict* . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute") (emphasis added); Fed. R. Crim. P. 32.2(b)(5) ("In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether either party requests that the jury be retained to determine the forfeitability of specific property *if it returns a guilty verdict*") (emphasis added).

[13] *See United States v. Feldman*, 853 F.2d 648, 662 (9th Cir. 1988) ("We therefore exercise our supervisory power to hold that trial courts should bifurcate forfeiture proceedings from ascertainment of guilt, requiring separate jury deliberations and allowing argument of counsel."); *United States v. Sandini*, 816 F.2d 869 (3d Cir. 1987) (requiring complete bifurcation of in personam forfeiture proceedings from the guilt phase of the trial).

[14] *See United States v. Jenkins*, 904 F.2d 549, 558 (10th Cir. 1990).

[15] *Libretti v. United States*, 516 U.S. 29, 39 (1995).

[16] *United States v. Courtney*, 816 F.3d 681, 686 (10th Cir. 2016) ("[I]t it is firmly established that when the jury has no sentencing function, as was the case here, it 'should reach its verdict without regard to what sentence might be imposed.' ").

In sum, the Court finds no error in its exclusion of evidence as to potential forfeiture.  The Court appropriately limited cross-examination on matters of only speculative relevance, and properly adhered to its practice of bifurcating the guilt and forfeiture phases of Defendant's trial.

2.      *The Court did not err in declining to re-instruct the jury at the close of evidence.*

This Court's standard practice is to read the lion's share of the jury instructions prior to opening statements.  In a criminal case, these include the elements of the substantive offenses charged, any applicable defense, the burden of proof, and the presumption of innocence.  The Court believes that reading instructions prior opening statements gives the jury the opportunity to frame everything that comes after—namely, any evidence and testimony offered by either side, and closing arguments—in the context of the governing legal principles.

This is not unlike how courts and lawyers attack legal problems.  With some variation, best practice in legal writing and reasoning is generally to begin by laying out the governing legal principles and then applying the facts of the particular case to those principles.  This procedure is not inherently incomprehensible for a jury of laypersons: most people want to know the rules of the game before they begin to play.  The Court believes its pre-evidence instructions allows the jury to know the rules it will be asked to apply to the hours of testimony and gigabytes of evidence it will see over the next days or weeks.

The Court followed its standard practice in this case.  It read Instructions 1 through 40 to the jury prior to opening statements.  Neither Defendant nor the Government objected to this at the time.  Near the close of evidence, Defendant requested the Court read Instructions 3, 5 through 9, 23, and 27 again.  These were cautionary instructions regarding the indictment and instructions on the presumption of innocence, the Government's burden of proof, and the Defendant's good faith defense.  The Court orally denied Defendant's Motion, as it would have been error to single

out specific instructions to highlight for the jury.  Defendant's Motion offers no reason why this conclusion was unsound, and so the Court does not revisit it.

Defendant does suggest that the Court's practice of instructing prior to opening was itself error.  He relies primarily on the recent decision of the Tenth Circuit in *United States v. Starks*.[17] In *Starks*, the court discussed what it called the "unconventional approach" of instructing prior to opening statements without repeating the instructions at the close of evidence.[18]  But it expressly did not lay down a "one-size-fits-all categorical rule" prohibiting courts from instructing the jury before opening without repeating the instructions later."[19]  Rather, it held that "under the particular circumstances of [the] case"—which involved the extremely prejudicial statement in the prosecution's closing argument that the defendant no longer retained the presumption of innocence—"the court's unconventional timing in delivering its oral instructions may have undermined any capacity (albeit limited) that the court's generalized instructions may have had to mitigate" the prejudicial effects from the prosecutor's argument.[20]

No such argument by the prosecution prejudiced Defendant's substantial rights here. Defendant's complaint is solely directed at the timing of the instructions.  And while the Tenth Circuit certainly did not endorse pre-evidence instructions, neither did it declare that such a procedure was, by itself, in error.  *Starks* does not support Defendant's request for a new trial.

Relatedly, Defendant complains that, because of the unusual trial schedule in this case, the jury was instructed seven calendar days prior to deliberations.  He again relies on *Starks* to suggest

---

[17] 34 F.4th 1142 (10th Cir. 2022).

[18] *Id.* at 1163.

[19] *Id.*

[20] *Id.* at 1164.

this was in error.[21]  But as noted above, *Starks* did not lay down a categorical rule regarding the timing of the instructions.

Some courts have adopted such a rule, noting that the idea "[t]hat jurors will remember instructions given at the beginning of a case may presume too much."[22]  The Court respectfully disagrees.  Our entire jury system is based on our trust in the ability of juries to take in and *remember* information over the days or weeks of a trial and to arrive at a just verdict based on the law and the evidence presented.  To say that jurors can remember days or weeks of testimony but cannot remember the Court's far more circumscribed legal instructions is profoundly absurd.  And crucially, the Court has never asked a jury to rely solely on what it remembers from the Court's oral instructions.  Every jury, including the jury in Defendant's case, is given a copy of the instructions before the Court reads them.  And at the conclusion of evidence and arguments, the Court instructs the jury that the second thing they should do upon retiring to the jury room, after selecting a foreperson, is to read the Court's instructions.  The Court presumes "that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court."[23]  Accordingly, the Court finds no error, based on *Starks* or any other principle of the law, in its practice of instructing the jury prior to opening statements.

> 3.      *Instruction 42 did not invade the province of the jury.*

Defendant's final argument in favor of a new trial is that the Court's Instruction 42 was improper.  Instruction 42 reads as follows:

> A final suggestion by the court—not technically an instruction upon the law—may assist your deliberations. The attitude of jurors at the outset of and during their

---

[21] The jury in *Starks* was instructed two days prior to beginning deliberations.  *Id.* at 1163.

[22] *State v. Nelson*, 587 N.W.2d 439, 444 (S.D. 1998).

[23] *United States v. Esso*, 684 F.3d 347, 352 (2d Cir. 2012) (quotation omitted).

deliberations is important. It is seldom productive for a juror, immediately upon entering the jury room, to make an emphatic expression of his or her opinion upon the case or to announce a determination to stand for a certain verdict. The reason is obvious: we are all human and it is difficult to recede from a position once definitely stated, even though later convinced it is unsound.

Jurors are selected for the purpose of doing justice. This presupposes and requires deliberation--counseling together in an effort to agree. Have in mind at all times, therefore, that you are a deliberative body, selected to function as judges of the facts in a controversy involving the substantial rights of the parties. You will make a definite contribution to efficient administration of justice when and if you arrive at a just and proper verdict under the evidence which has been admitted. No one can ask more and you will not be satisfied to do less.

At the instruction conference prior to trial, Defendant stated that he preferred the Court not give an instruction that, as he said, instructed "everybody [to] get along and don't state what your position is early" in the hopes that one or more jurors might become entrenched in defense of his innocence, leading to a hung jury. While the Court certainly understands the strategic benefit that would have provided Defendant, this is not a legal objection and is not a basis for a new trial.

Defendant also suggests that this instruction improperly invaded the province of the jury by "suggest[ing] to the jury how to conduct deliberations." Defendant provides no legal support for this argument. Nor does the Court find anything legally objectionable in the instruction. A new trial on this ground is not warranted.

**IT IS THEREFORE ORDERED** that Defendant's Motion for a New Trial (Doc. 77) is **DENIED.**

**IT IS SO ORDERED.**

Dated this 17th day of February, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE