## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     *Plaintiff,*

vs.                               Case No. 21-CR-10073-EFM

MICHAEL R. CAPPS,

     *Defendant.*

## MEMORANDUM AND ORDER

Defendant Michael R. Capps was found guilty of 12 different counts related to a scheme to fraudulently obtain COVID-19 relief payments. The Court then sentenced Capps to 27 months' imprisonment, to be followed by two-year period of supervised release. Capps moved for a new trial, arguing in part that the Court had erred in declining to re-instruct the jury after closing arguments. The Court denied the motion. Capps now requests that he be allowed to remain at liberty during the pendency of his appeal, pursuant to 18 U.S.C. § 3143(b). The Government opposes the Motion.

Because Capps does not present a danger to the community or a flight risk, and his appeal raises a substantial question of law that, if decided in his favor, would result in a new trial, the Court grants Capps' Motion (Doc. 115).

## I.     Factual and Procedural Background

On September 8, 2021, the grand jury indicted Capps on 19 counts related to a fraudulent COVID-19 relief scheme.  Capps appeared by summons two weeks later and entered a plea of not guilty.  Magistrate Judge Birzer ordered Capps released on a $25,000 unsecured bond, at which time Capps surrendered his passport.  Capps has been on bond since that time, and the Court is not aware of any instance in which he violated the conditions of his release.

The Government dismissed one count prior to trial, and Capps proceeded to trial on the remaining 18 counts.  The trial began on December 12, 2022.  The Court, consistent with its recent practice, read the substantive jury instructions to the jury that morning, prior to opening statements.  Each juror received a copy of the instructions in their notebook.  On December 19, near the close of trial, Capps' trial counsel filed a written motion requesting that the Court re-read certain instructions to the jury, including the burden of proof and presumption of innocence instructions.  The Court denied counsel's request, reasoning that it would be error to single out instructions to re-read.  The Court also declined to re-read the instructions in their entirety.  The case was submitted to the jury that day.  Two days later, the jury returned a verdict finding Capps guilty on 12 counts.

Capps filed a motion for a new trial out of time, arguing in part that the Court had erred by not re-instructing the jury after closing arguments by counsel.  The Court denied Capps' motion.  It relied in part on the untimeliness of Capps' motion, but also noted its opinion that instructing the jury prior to opening statements without repeating the process after closing arguments was not in error.

In preparation for Capps' sentencing, the Court directed the United States Probation Office to prepare a Presentence Investigation Report ("PSR") on Capps.  That report included reference

to a Confidential Human Source ("CHS") who reported, on September 10, 2021, to the FBI that Capps had traveled to Panama to obtain dual citizenship and referred to Panama as his "Plan B." The Assistant United States Attorney represents that Capps' trial counsel emailed her in February 2023 to inform her that Capps is a legal resident of Panama, and that he had to return at least once every two years in order to maintain his status.

The Court sentenced Capps to 27 months' imprisonment, to be followed by two years of supervised release. Capps is also required to pay $318,647.21 in restitution to the victims. The Court ordered Capps' to surrender to the Bureau of Prisons designated facility as directed by the United States Marshal. Capps' timely appealed. He has since been notified that he is to report to the El Reno Satellite Camp on June 27, 2023.

## II.    Legal Standard

Generally, "a person found guilty of an offense and sentenced to a term of imprisonment" shall be detained even if that person has filed an appeal.[1] But the statute permits release pending appeal if the judge finds:

> "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment, or
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.[2]

---

[1] 18 U.S.C. § 3143(b).

[2] *Id.* § 3143(b)(1)(A)-(B).

A "substantial question" is a question "of more substance than would be necessary to a finding that it was not frivolous."[3]  "It is a 'close' question or one that very well could be decided the other way."[4]  A question may be "substantial" because it is novel, has not been decided by controlling precedent, or is "fairly doubtful."[5]  An issue that has not been decided by controlling precedent, however, may not necessarily be substantial.[6]  For instance, the issue may be patently meritless or one as to which there is no reason to conclude the Tenth Circuit would depart from the unanimous resolution of the issue by other circuits.[7]  Ultimately, whether a question is "substantial" must be determined on a case-by-case basis.[8]

### III.    Analysis

**A.    Risk of Flight**

The Government concedes that Capps does not pose a danger to the community if allowed to remain on release.  Under subsection (A) of § 3143(b)(1), then, the only remaining question is whether Capps is a flight risk.  Defendant must prove by clear and convincing evidence that he is not likely to flee during the pendency of his appeal.[9]

Capps has met his burden.  During the approximately 22-month period between his indictment and the present, Capps has demonstrated his ability to comply with conditions of release.  At no point during that time was there any concern that Capps was a flight risk.  The

---

[3] *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985).

[4] *Id.* (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)).

[5] *Id.* (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir.1985)).

[6] *Id.*

[7] *Id.* (quoting *Giancola*, 754 F.2d at 901).

[8] *Id.*

[9] *United States v. Gregory*, 2021 WL 1978630, at *1 (D. Kan. 2021); *see* 18 U.S.C. § 3143(b)(1)(A).

Government argues that different incentives are at play now, as Capps now has a 27-month federal sentence looming over his head, in conjunction with over $300,000 in restitution.  But this has been the case since his sentencing in early May.  Additionally, Capps appears to have strong ties to the community.  He was born in Wichita and has lived here since 2005. He has family ties in the community, including his son, with whom he has a strong bond.  As he states, he is "not likely to throw away his whole life by fleeing" to avoid a 27-month prison term.

The Government also raises the possibility that Capps presents a flight risk because he has legal status in Panama.  The PSR reports that a CHS told the FBI that Capps viewed Panama as "Plan B."  Whether or not Capps said this, he later surrendered his passport, making a flight to Panama much less likely.  In addition, given the family and community ties discussed above, the Court does not find it likely that Capps would cuts ties in Wichita and flee to Panama for the rest of his days.  In sum, the Court finds by clear and convincing evidence that Capps is neither a danger to the community nor a flight risk.

**B.      Substantial Question of Law**

There is no suggestion that Capps' appeal is for the purpose of delay.  That leaves only the question under subsection (B) whether the appeal "raises a substantial question of law or fact likely to result in . . . an order for a new trial."[10]  The only potentially "substantial question" raised is the Court's decision to instruct the jury prior to opening statements and to not re-instruct the jury at the close of evidence or after closing arguments.  The Court found that this decision was not in error when it ruled on Capps' motion for a new trial.

---

[10] 18 U.S.C. § 3143(b)(1)(B).

That ruling, however, does not decide the issue.  As the Court noted in that ruling, several other courts have held that a trial court errs when it employs the approach the Court followed in Capps' trial.[11]  None of these are controlling precedent, but they lend credence to Capps' position that the question is a close one.  And though the Tenth Circuit in *United States v. Starks*[12] declined to adopt a "one-size-fits-all categorical rule," as the aforementioned courts did, it certainly did not endorse what it referred to as the Court's "unconventional approach."[13]  The court in *Starks* ultimately concluded that the timing of the instructions "may have undermined the capacity of the (already unhelpful) generalized instructions to mitigate the strong potential for prejudice—and actual prejudicial effects—of the government's" erroneous statement in closing arguments as to the presumption of innocence.[14]

Capps' trial presented a different set of facts, as the Court noted in ruling on the motion for a new trial.  There was no suggestion that the prosecutors had injected some prejudice into the proceeding that could have been cured by post-evidence reading of the jury instructions.  Further, the Court provided each juror with a written set of instructions at the outset of the trial, and at the conclusion of the trial, instructed the jury to begin its deliberations by re-reading the instructions

---

[11] *See, e.g.*, *State v. Woolcock*, 518 A.2d 1377, 1389 (1986) (holding that "[i]ntroductory remarks are no substitute" for "detailed instructions give immediately before the jury's deliberation"); *State v. Nelson*, 587 N.W.2d 439, 444 (S.D. 1998) ("[p]reliminary instructions serve to inform jurors of their 'function,' " but their use "never relieves the court of its duty to comprehensively inform jurors of the law at the close of the evidence," and the idea "[t]hat jurors will remember instructions given at the beginning of a case may presume too much" (quoting *State v. Eagle Star*, 558 N.W.2d 70, 74 (S.D. 1996))); *United States v. Ruppel*, 666 F.2d 261, 274 (5th Cir. 1982) (concluding that the district court erred in instructing the jury on the presumption of innocence at the beginning of the trial but failing to repeat the instructions at the close of trial eleven days later); *State v. Romanosky*, 859 P.2d 741, 742 (1993) (holding that the judge's failure to re-instruct the jury regarding the reasonable doubt standard at the end of the evidence was reversible error).

[12] 34 F.4th 1142 (10th Cir. 2022).

[13] *Id.* at 1163.

[14] *Id.* at 1166.

(although the Court did not re-read the instruction to the jury at that time).  For these reasons, the Court concluded *Starks* did not control, and that no other argument on this topic was persuasive, when it denied Capps' motion for a new trial.  But the Tenth Circuit's statements in *Starks*, as well as the precedent from other jurisdictions,  suggest that this question remains a "close" one.  The Court therefore concludes Capps has identified a "substantial question of law," which, should he prevail, would likely result in a new trial.  Having made the required findings under 18 U.S.C. § 3143(b), the Court grants Capps' Motion to remain on release during the pendency of his appeal. Capps will remain subject to the same conditions of release that have governed his behavior while on bond.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Release from Custody Pending Appeal (Doc. 115) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 23rd day of June, 2023.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE