## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       *Plaintiff,*

  vs.                             Case No. 21-10073-EFM

MICHAEL R. CAPPS,

       *Defendant.*

## MEMORANDUM AND ORDER

This matter primarily comes before the Court on Claimant Charles Capps's Objection (Doc. 174)[1] to the Government's Writ of Continuing Garnishment as to funds, in the amount of $74,573.37, held by Security 1st Title, LLC.  The funds at Security 1st are the proceeds from a sale of a residence that Defendant Michael Capps used to own.  Claimant is the son of Defendant, and he asserts that the Government does not have a right to the funds held by Security 1st and that he is entitled to $50,000 of those funds due to a mechanic's lien.  The Government contends that it is entitled to the Security 1st funds, and Claimant's mechanic's lien is invalid.

---

[1] Claimant entitled this document "Limited Appearance of Claimant Charles Capps to Object to Garnishment and to Provide Notice of Interpleader Action."

The Government also filed a Motion for Order Restraining Property and Rights to Property Available for Payment of Restitution (Doc. 207)[2] and an Amended Motion for Order Restraining Property and Rights to Property Available for Payment of Restitution (Doc. 211).    The Government seeks to restrain Defendant, or any person or entity acting on his behalf, from taking any action that would diminish the value of Defendant's real or personal property.

The Court held a hearing on Claimant's Objection and the Government's first Motion for Restraining Order on September 12, 2024.  Several weeks after the hearing, Claimant's attorney entered his appearance for Duaglo, LLC.  Duaglo was involved in the redemption and sale of Defendant's residence because Duaglo advanced the redemption funds to Defendant.  Claimant and Duaglo filed joint motions requesting that the Court allow intervention by Duaglo into the case (Doc. 217) and for distribution of the Security 1st funds to Claimant, Claimant's attorney, and Duaglo (Doc. 215).  In addition, Defendant filed a Motion to Join in support of Claimant's and Duaglo's motions (Doc. 219).  The Government opposes these motions.

For the reasons stated in more detail below, the Court overrules Claimant's Objection.  In addition, the Court denies as moot the Government's first Motion for Restraining Order and denies the Government's Amended Motion for Restraining Order.  Finally, the Court grants Defendant's Motion for Joinder, but the Court denies Claimant's and Duaglo's Joint Motions for Intervention and Distribution of Funds.

---

[2] Defendant Capps filed an untimely response to this motion, and the Court struck it.

## I.    Factual and Procedural Background

### A.    Defendant Michael Capps's Underlying Criminal Case

On September 8, 2021, Defendant Michael Capps was indicted on 19 counts related to a fraudulent COVID-19 relief scheme.  Defendant proceeded to trial.  On December 21, 2022, he was found guilty on 12 counts, including one count of bank fraud, three counts of false statements to a bank and the Small Business Administration, four counts of wire fraud, and four counts of money laundering.

On May 11, 2023, the Court sentenced Defendant to 27 months' imprisonment, to be followed by two years of supervised release.  Defendant was ordered to pay $318,647.21 in restitution, and the Court entered a forfeiture judgment in the amount of $178,193.17.  Defendant appealed his conviction to the Tenth Circuit on May 17, 2023.  The Court allowed Defendant's release during his appeal.

On August 13, 2024, the Tenth Circuit issued its order on Defendant's underlying appeal finding that it was not plain error or an abuse of discretion to instruct the jury at the beginning of Defendant's case.  Thus, the Tenth Circuit affirmed this Court's judgment and issued the mandate on October 24, 2024.

### B.    Garnishment Proceedings as to Defendant Capps

During the pendency of Defendant's appeal, the Government initiated garnishment proceedings as to Defendant's property to recover the amount of restitution Defendant owes.

Defendant filed numerous motions and objections to the garnishment proceedings. The Court denied Defendant's motions in an Order dated June 13, 2024.[3]

Defendant appealed this Court's June 13 Order to the Tenth Circuit, and the Government filed a Motion to Dismiss Defendant's appeal. These matters remain pending in the Tenth Circuit with the same panel of judges. On July 23, 2024, this Court granted Defendant's Motion to Stay Enforcement of the June 13 Order until the Tenth Circuit issues a decision on that appeal and/or a decision on the Government's Motion to Dismiss the Appeal.

**C.    Defendant's Governeour Street Residence and Claimant's Objection**

On February 8, 2020, Defendant and Claimant entered into an agreement ("Remodeling Contract") for Claimant to renovate an unoccupied, residential property on Governeour Street ("Residence" or "Property"). The Remodeling Contract provided that Defendant would pay Claimant $50,000 upon the sale of the Residence. In addition, Defendant agreed to pay Claimant 50% of any net proceeds in excess of $100,000.

On May 11, 2022, Lakeview Loan Servicing, LLC ("Lakeview"), filed a Petition to Foreclose Mortgage in the District Court of Sedgwick County, Kansas against Defendant, relating to the Governeour Street Residence. Defendant informed Claimant of the foreclosure petition, and Claimant shortly thereafter stopped work on the Property because he was concerned that he would not be compensated.

---

[3] Doc. 192. The Court will not set forth its rulings here.

On February 17, 2023, a Judgment of Foreclosure was granted to Lakeview which directed the Residence to be sold if the judgment was not satisfied within 14 days. In the Foreclosure Judgment, Lakeview was granted a judgment of $119,481.75.[4]

On June 28, 2023, the Sheriff of Sedgwick County sold the Residence by credit bid, to Lakeview for $152,708.59. An order confirming the sale was entered on July 24, 2023. This order also showed Defendant's redemption period expiring on September 28, 2023—three months after the date of sale.

Claimant avers that after the June 28 sale, he and Defendant evaluated the Property in its unfinished condition and the value of the Property if remodeling were complete. They determined that there was equity remaining in the Property if the remodeling was finished. Starting on or after June 28, 2023, Claimant began working on the Residence to make it marketable. Some of the tasks Claimant completed included installing carpet, building a new deck, installing countertops, remodeling bathrooms, and painting interior surfaces.

On August 18, 2023, the Government filed its Notice of Lien for Fine and/or Restitution with the Register of Deeds of Sedgwick County. Defendant resided at the Governeour Street Residence, so the Government filed two different types of liens—one to encumber all of Defendant's personal property, and the other one to encumber Defendant's real estate.

Defendant had no money to redeem the Property, so he entered into an agreement with Duaglo to redeem the Property. On August 28, 2023, Defendant transferred his interest in the Governeour Street Residence, including his equitable and statutory right to redeem the Property

---

[4] Cybertron International, Inc. was granted a second lien against the Property, and Claimant (as a John Doe) was found to have no interest in the Property. *See* Doc. 197-1 at 3, ¶ 5.

and the right to any surplus upon Sheriff's sale, to Duaglo.  In a separate agreement, Defendant reserved the right to occupy the Property and the right to repurchase from Duaglo for $167,708.59. No funds were exchanged between Duaglo and Defendant.

On August 28, 2023, Duaglo redeemed the Governeour Street Residence by paying the redemption price of $155,027.04 to the Court Clerk for the District Court of Sedgwick County. On September 28, 2023, Duaglo entered a contract with Gary Bohannon to sell the Residence for $253,500, with a closing date of November 28, 2023, but the closing date was delayed.

Claimant completed the remodeling work on November 27, 2023, and on November 28, 2023, he filed a Statement of Lien for Labor, Equipment, Material and Supplies ("mechanic's lien") with the District Court of Sedgwick County.  He attached the Remodeling Contract between him and Defendant to the filing.  Claimant asserts that this Remodeling Contract was reaffirmed between the parties after the Sheriff's sale on June 28, 2023.

On December 13, 2023, Duaglo and Defendant executed an Extension and Amendment of Contract for Purchase of Property and Redemption Rights ("Amendment").  This Amendment reduced the price for Defendant to repurchase the Property from Duaglo from $167,708.59 (the original agreement price) to $155,027.04 (the amount Duaglo paid to redeem the Property).[5]  The Amendment states that the Government agreed that (a) Duaglo may be paid out of the closing amount on the condition that the price be $155,027.04, and that (b) the Government would "file a Partial Release of Judgment Lien that releases the Property from the lien in exchange for the deposit of all funds 'due to Seller' at Closing into an escrow with Security 1st to be held pending

---

[5] The Amendment reduced the profit due to Duaglo of $12,681.58 to zero.  The Court notes that Duaglo and Claimant state that the amount would have been $12,881.58, but the amount actually equals $12,681.58.

agreement of the parties or entry of an order of a court with jurisdiction (the 'Escrowed Proceeds') directing payment by Security 1st."[6]

On December 14, 2023, Duaglo conveyed the Property to Defendant by Statutory Warranty Deed, and then Defendant conveyed the Property to the Bohannons by Statutory Warranty Deed. The net sale proceeds remaining after payment to Duaglo of $155,027.04 and all other costs of sale are $74,550.37.  Security 1st is holding $74,573.37 in escrow.[7]

The Government, Defendant, and Claimant were unable to reach an agreement as to the disposition of the net sale proceeds from the sale of the Governeour Street Residence.

On February 5, 2024, the Government filed an Application for Writ of Continuing Garnishment as to Property held by Security 1st, and the Court issued the Writ that same day.  In addition, the Government filed a Notice of Garnishment to Interested Party Charles Capps.

On February 27, 2024, Claimant, represented by counsel, filed an Objection to the Writ of Continuing Garnishment as to the funds held by Security 1st.[8]  In this Objection, Claimant objected to the garnishment of any funds on deposit with Security 1st and notified the Court of a civil

---

[6] Doc. 197-1, pp. 9–11.  The Government concedes that it required this Amendment; otherwise, the Government would not release the lien on the Property.

[7] The Government asserts that it is unclear as to why the amounts differ slightly.

[8] Doc. 174.  On February 29, 2024, Security 1st filed an Answer to the Writ of Garnishment, stating that it has custody or possession of a cash deposit of $74,573.37.  It lists Defendant's interest as a stakeholder/escrow agent. It also references the interpleader action in Sedgwick County District Court and states that "Defendant has competing claims to the funds."  Security 1st requests an order to pay the funds into the Court.  (Doc. 176).

Defendant Capps also filed an Exemption Claim and Hearing Request related to the Security 1st funds.  In this document, Defendant stated that the Property was subject to an interpleader adjudication in Sedgwick County District Court and requested a hearing (Doc. 175).  The Government objected.  The Court ruled on Defendant's exemption claim and hearing request in its June 13, 2024 Order.  The Court found Defendant did not meet his burden of showing that he was entitled to relief because his request was conclusory.  In addition, the Court determined that none of the exemptions set forth in 26 U.S.C. § 6334(a)(1)–(8), (10), and (12) were applicable to Defendant because those exemptions did not cover the sale of a personal residence.  Furthermore, the Court denied Defendant's request for a hearing.  That order is currently on appeal to the Tenth Circuit.

Interpleader Action that he filed that day in Sedgwick County District Court, entitled *Charles (Chaz) Capps v. Michael Capps, the United States of America, & Security 1st Title LLC* ("Interpleader Action").[9]   Claimant's Objection was only two pages, but he attached the Interpleader Action.  In the Interpleader Action, Claimant stated that he had a mechanic's lien in the amount of $50,000 in the escrowed funds and that his lien takes priority over other interests. Claimant requested that the Sedgwick County District Court determine the ownership and priorities of the parties to the Security 1st escrowed funds that are subject to the Writ of Garnishment.[10]

The Government filed a Response to the Objection arguing that Claimant does not have a valid mechanic's lien because he failed to comply with the statutory requirements of K.S.A. § 60-1102, or in the alternative, Claimant's mechanic's lien is unenforceable pursuant to K.S.A. § 60-2414(k).  Subsequently, the Court directed Claimant to file a reply to the Government's response. Claimant filed another "Objection to Garnishment" setting forth facts and the basis for his objection to the garnishment of the Security 1st Title funds.[11]   In his Reply or (Second) Objection, Claimant argues that the Government does not have any right to the Security 1st Title funds for multiple reasons.

Claimant also filed a Motion or Request for Hearing on his Objection.  The Government responded by asserting that Claimant did not have a right to a hearing.  In addition, the Government

---

[9] Case No. SG-2024-CV-000357.

[10] The Government subsequently removed the case to this Court on March 8, 2024.  Case No. 24-1042-EFM-TJJ.  There is a pending unopposed Motion to Dismiss in that case.

[11] Doc. 197.

procedurally objected to Claimant's (Second) Objection, stating that it was improper, and requested that the Court strike it.[12]  The Government and Claimant continue to disagree as to whether Claimant is entitled to $50,000 of the funds being held in escrow by Security 1st.

The Court granted Claimant's request for a hearing and held it on September 12, 2024.[13]  At the hearing, the Court requested supplemental briefing on two limited issues.  Specifically, the Court requested that the Government provide authority for its position that Duaglo's redemption rights—purchased from Defendant—were encumbered by the restitution lien against Defendant and thus the restitution lien also attached to the Property's sale proceeds.  In addition, the Court requested that Claimant provide authority for his position that his Interpleader Action cured the technical failure of his mechanic's lien.

After the supplemental briefing concluded, and several weeks after the hearing, Claimant's attorney entered his appearance for Duaglo.  Claimant and Duaglo filed joint motions requesting Duaglo's intervention into the case and requesting distribution of the entirety of the Security 1st funds to Claimant, Duaglo, and their attorney.  Specifically, they seek the distribution of $50,000 to Claimant, $5,000 to Claimant's attorney for attorney fees to date, and the remainder (amounting to approximately $19,573) to Duaglo.  In addition, Defendant filed a Motion to Join the joint motions.

---

[12] Doc. 200.  The Court acknowledges the procedural irregularities in this case, but it will not strike the (Second) Objection but will instead consider it as Claimant's Reply and consider it on the merits.  The Court also notes that Claimant (and now Duaglo) continue to raise additional issues/arguments after Claimant's initial Objection was filed.  Generally, if a party fails to raise an argument in its initial brief, the argument is waived.  Although the Court addresses some of the issues Claimant raises in his supplemental briefing, it will not address all the additional issues raised in the (Second) Objection, Reply briefs, and supplemental memorandum.

[13] The Court also heard argument on the Government's Motion to Restrain Property and Rights to Property.

## II.    Analysis

### A.    Claimant's Objection

Claimant contends that the Government does not have any rights to the Security 1st escrowed funds in the amount of $74,573.37, and the Government argues that it is entitled to all the Security 1st funds.  Claimant makes several arguments that the Government failed to properly obtain rights to the Property.  First, Claimant contends that the Government should have redeemed the Property, but the Government failed to do so.  Next, Claimant argues that Defendant's right to repurchase the Property expired on November 28, 2023—the scheduled closing date.  Thus, he argues that because Defendant did not repurchase the Property before that date, Defendant did not have any rights to the Property and so neither did the Government.  Finally, Claimant asserts that he has a valid mechanic's lien and that he is entitled to $50,000 of those funds.[14]

The Government argues that its restitution lien attached to Defendant's right of redemption.  So when Duaglo purchased Defendant's redemption rights, Duaglo purchased the restitution rights encumbered with the lien.  The Government also asserts that the restitution lien did not merely attach to the redemption rights but also ran with the Property.  Finally, the Government contends that Claimant does not have a valid mechanic's lien because it fails to comply with the statutory requirements of K.S.A. § 60-1102.[15]  The Court agrees with the Government.

---

[14] In Claimant's (Second) Objection, he also requested that the Court restore to Duaglo the agreed-upon profit between Defendant and Duaglo in the amount of $12,881.58.  This issue was technically raised as a new issue in the "reply" brief, and Claimant would not have standing to assert Duaglo's rights.  After the briefing and hearing on Claimant's Objection, Duaglo and Claimant requested that Duaglo be allowed to intervene in the case and requested distribution of funds to Duaglo (in the amount of approximately $19,500).  The Court will address these contentions below.

[15] The Government also argues, in the alternative, that Claimant's mechanic's lien is unenforceable pursuant to K.S.A. § 60-2414(k).  The Court finds it unnecessary to address this argument.

### 1.  The Government's Right to the Security 1st Funds

Pursuant to 18 U.S.C. § 3613(c), an order of restitution operates as "a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986."[16] "[W]hether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law."[17] There is a two-part test that the Court must consider when the Government seeks to enforce its tax lien against identified property.[18] First, the Court looks "to state law to determine what rights the taxpayer has in the property the Government seeks to reach."[19] Next, the Court considers "federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation."[20]

In this case, Security 1st is holding escrowed funds related to the sale of the Governeour Street Residence. Defendant was the owner of it when it was foreclosed upon by Lakeview in 2022. On May 11, 2023, the Court entered a Judgment against Defendant with restitution ordered in the amount of $318,647.21. This order of restitution operated as a lien on all Defendant's property and rights to property.[21]

---

[16] 18 U.S.C. § 3613(c).

[17] *Drye v. United States*, 528 U.S. 49, 58 (1999) (quoting *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 727 (1985)).

[18] *United States v. Wilhite*, 774 F. App'x 478, 484 (10th Cir. 2019) (citing *In re Krause*, 637 F.3d 1160, 1163 (10th Cir. 2011) (quoting *Drye*, 528 U.S. at 58)).

[19] *Drye*, 528 U.S. at 58.

[20] *Id.*

[21] 18 U.S.C. § 3613(c) (stating that an order of restitution operates as "a lien in favor of the United States on all property and rights to property of the person," and "[t]he lien arises on the entry of judgment.").

Defendant, as the owner of the Governeour Street Residence, had the statutory right to redeem the Property pursuant to K.S.A. § 60-2414. On June 28, 2023, the Property was sold by Sheriff's sale, and Defendant was given a three-month redemption period until September 28, 2023. This state-law right to redeem is considered Defendant's property.

On August 18, 2023, the Government filed its Notice of Lien for Fine and/or Restitution with the Register of Deeds of Sedgwick County. Pursuant to 18 U.S.C. § 3613(d), "upon filing of a notice of lien in the manner in which a notice of tax lien would be filed . . . the lien shall be valid against any purchaser" subject to some exceptions.[22] Thus, the Government's lien against Defendant's property and rights to property attached on May 11, 2023 pursuant to the Order of Restitution. Therefore, unless an exception applies, the Government's lien extended to Defendant's property right to redeem.

On August 28, 2023—three months after the restitution order was entered against Defendant and ten days after the Government filed its Notice of Lien in Sedgwick County— Defendant transferred his interest in the Governeour Street Residence to Duaglo. The transfer included Defendant's equitable and statutory right to redeem the Property and the right to any surplus. That same day, Duaglo redeemed the Governeour Street Residence.[23] As noted above, once the notice of lien is filed, it "shall be valid against any purchaser" subject to certain exceptions in 26 U.S.C. § 6323(b), (c), or (d).[24] Duaglo, as an assignee of redemption rights of real property,

---

[22] 18 U.S.C. § 3613(d).

[23] Claimant and Duaglo contend that Duaglo's purchase and redemption was a purchase money interest. The Court finds that the redemption rights were already encumbered with the lien, so regardless of how Claimant and Duaglo categorize the transaction, the redemption rights were encumbered with the government lien.

[24] 18 U.S.C. § 3613(d).

does not fall under any of the exceptions.  Thus, when Duaglo obtained Defendant's redemption rights, and redeemed the Property, Duaglo obtained the Property encumbered by the Government's lien.

The Court recognizes that K.S.A. § 60-2414(h) states that an assignee or transferee of a right to redemption "shall have the same right of redemption as the defendant owner," and that "[t]he assigned or transferred right of redemption shall not be subject to levy or sale on execution." However, the Court only looks to state law "for delineation of the taxpayer's rights or interests" and "leave[s] to federal law the determination whether those rights or interests constitute 'property' or 'rights to property' within the meaning of § 6321."[25]  Here, the state law first provides that Defendant has the redemption right, and thus, the redemption right is Defendant's property.  Then, the Court must turn to federal law, and federal law provides that upon the Government's filing of a notice of lien, it is "valid against *any* purchaser" except to certain properties or transactions.[26] None of the exceptions set forth by federal law are present in this case.  Thus, federal law dictates that the redemption right was Defendant's property, and Duaglo obtained that redemption right subject to the restitution lien against Defendant.

In addition, the federal lien did not simply attach to the right of redemption that Duaglo obtained.  Instead, the lien ran with the Property.  "The transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere.'"[27]  Because Defendant's

---

[25] *Drye*, 528 U.S. at 52.

[26] 18 U.S.C. § 3613(d) (emphasis added).

[27] *United States v. Bess*, 357 U.S. 51, 57 (1958) (quoting *Burton v. Smith*, 38 U.S. 464, 483 (1839)); *see also Russell v. United States*, 551 F.3d 1174, 1179 (10th Cir. 2008) ("The transfer of the attached property 'does not affect

redemption rights were encumbered with the lien, Duaglo's redemption rights were also encumbered by the same lien. So, when Duaglo redeemed the Property, the Property was encumbered with the lien.

In sum, the Government's lien attached to Defendant's property rights and to Defendant's property. When Duaglo obtained Defendant's right to redeem, Duaglo obtained those rights encumbered by the Government's lien. And when Duaglo redeemed the Property, the Property was also encumbered with the lien. Accordingly, when the Property was sold—regardless of whether Defendant or Duaglo sold it—the proceeds from the sale of that Property were encumbered by the Government's lien. Accordingly, the Government is entitled to the proceeds.

### 2. Claimant's Mechanic's Lien

Claimant contends that he is entitled to $50,000 of the escrowed funds due to a mechanic's lien. The Court finds that Claimant does not have a valid mechanic's lien. "Mechanics' liens are governed by K.S.A. 60-1101 *et seq*. They are designed to protect unpaid suppliers of labor and materials for real estate construction projects."[28] "Kansas law requires strict compliance with the procedure prescribed in the statute in order to perfect a mechanic's lien."[29]

K.S.A. § 60-1102(a)(2) requires that any person claiming a lien on real property must file a verified statement with "the name and address sufficient for service of process of the claimant" within four months after the last labor performed.

---

the lien because no matter into whose hands the property goes, the property passes *cum onere*, or with the lien attached.'") (quoting *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244-45 (10th Cir. 1989)).

[28] *Tarlton v. Miller's of Claflin, Inc.*, 43 Kan. App. 2d 547, 227 P.3d 23, 26 (2010) (citing K.S.A. § 60-1101)).

[29] *Buchanan v. Overley*, 39 Kan. App. 2d 171, 178 P.3d 53, 56 (2008) (citing *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 910 P.3d 839 (1996)).

Claimant filed his mechanic's lien on November 28, 2023 with the District Court of Sedgwick County, asserting that he was entitled to $50,000. Claimant's lien, however, does not comply with § 60-1102(a)(2) because the address Claimant provided on his mechanic's lien was for a property at which Claimant did not reside.[30] Because Claimant did not live at the provided address, it cannot be considered sufficient for service of process. Without an address sufficient for service of process on Claimant, the mechanic's lien does not strictly comply with the statute and is invalid.[31]

Claimant concedes that the mechanic's lien contains an invalid address.[32] Claimant, however, asserts that the filing of the Interpleader Action cured any defects in the mechanic's lien because the Interpleader Action was filed within the four-month timeframe as required under K.S.A. § 60-1102(a).[33] Thus, Claimant asserts that the correct address for service of process is satisfied by the filing of his Interpleader Action. The Court disagrees.

K.S.A. § 60-1105(b) provides that "[w]here action is brought to enforce a lien the lien statement may be amended by leave of the judge in furtherance of justice, except to increase the amount claimed." Claimant, however, never sought leave to amend. Instead, Claimant filed an

---

[30] The Government provides an affidavit from the current owner of the property for which Claimant stated was his address. The affiant states that Claimant has not resided at the residence or conducted business from the property since the affiant/owner took possession in December 2021. Thus, Claimant's November 28, 2023 mechanic's lien, in which he stated that the address was his, was incorrect.

[31] *Buchanan*, 178 P.3d at 58 (finding that because the claimant "failed to strictly comply with the requirements of K.S.A. 60-1102 by not verifying his address sufficient for service of process, the district court erred in holding that the lien was valid.").

[32] At the hearing, Claimant provided no reason for the incorrect address.

[33] K.S.A. § 60-1102(a) requires that a mechanic's lien be filed "within four months after the date material, equipment or supplies, used or consumer was last furnished or last labor performed under the contract." Claimant states in the mechanic's lien that the last day labor was performed or materials furnished were on November 27, 2023.

Interpleader Action.  And in the Interpleader Action, he asserted that his mechanic's lien had priority over other liens or encumbrances and explicitly relied on the mechanic's lien.[34]  Nowhere in the Interpleader Action did Claimant assert that the mechanic's lien needed to be amended.  In fact, Claimant specifically and explicitly relied on the mechanic's lien as though it were proper.  Even when confronted with the facts and evidence that the address was incorrect, Claimant never requested that the Court allow him to amend the mechanic's lien and never sought to provide an amended mechanic's lien.

Furthermore, Kansas law would prohibit the Court from allowing Claimant to amend his mechanic's lien.  "K.S.A. 60-1105(b) does not permit the trial court to allow amendment of a vitally defective mechanic's lien statement after the statutory filing period has expired."[35]  Here, Claimant's original mechanic's lien was vitally defective because it did not comply with K.S.A. § 60-1102(a)(2)'s requirement of a name and address sufficient for service of process of the claimant.  In addition, the statutory filing period had long expired, and Claimant made no effort to amend the mechanic's lien prior to the expiration of the statutory filing period.[36]  As noted above, the filing of the Interpleader Action, which contained no allegations as to an amended mechanic's lien, or the need to change or amend the mechanic's lien, was insufficient to place anybody on notice that Claimant sought to amend his original mechanic's lien.  Thus, Claimant's Interpleader

---

[34] Even in the Interpleader Action, Claimant does not provide his address.

[35] *Tradesmen Int'l, Inc. v. Wal-Mart Real Estate Bus. Trust*, 35 Kan. App. 2d 146, 129 P.3d 102, 106 (2006).

[36] On March 29, 2024, the Government asserted that Claimant's mechanic's lien did not strictly comply with the mechanic's lien statute due to the incorrect address.  This date was within the four-month statutory filing period. Claimant could have, at that time, sought to amend the mechanic's lien.  Claimant did not, and has never sought to, amend the mechanic's lien but instead relies on his Interpleader Action as the "amendment."

Action did not cure his original defective mechanic's lien, and Claimant's mechanic's lien is invalid because it did not strictly comply with the statutory requirements.

In sum, the Court overrules Claimant's Objection. This Court must follow Kansas law and its requirement of strict compliance with the mechanic's lien statute. Accordingly, Claimant has no valid, legal right to $50,000 of Security 1st's escrowed funds.

**B.    Claimant's and Duaglo's Joint Motions**

After the Court held a hearing on Claimant's Objection, Claimant and Duaglo filed a Joint Motion for Intervention by Duaglo. In this motion, Claimant and Duaglo seek the Court's leave to allow Duaglo to intervene in the case to claim an interest in the escrowed funds with Security 1st. The parties state that they entered into a Joint Representation Agreement and an agreement as to the distribution of the funds. The Government opposes the motion arguing that the motion lacks both factual and legal support, is untimely, and cannot serve as a legal basis for Duaglo's intervention in this proceeding.

In addition, Claimant and Duaglo jointly filed a Motion for Distribution of Funds. In this motion, they request that the Court distribute the Security 1st escrowed funds to Claimant, Claimant's attorney, and Duaglo. The Government asserts that if Duaglo is not permitted to intervene, then Duaglo has no standing to request distribution of the funds. In addition, the Government states that the parties are not entitled to the funds because they provide no valid basis for the amounts claimed.

*1.    Duaglo's and Claimant's Motion to Intervene*

Federal Rule of Civil Procedure 24(a) governs intervention as a matter of right, and Rule 24(b) governs permissive intervention.[37]

> Under Rule 24(a), an applicant may intervene as a matter of right if (1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties.[38]

Permissive intervention under Rule 24(b) requires a timely motion and that the intervening party "has a claim or defense that shares with the main action a common question of law or fact."[39] Timeliness of a motion to intervene is determined by considering all the circumstances, "including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."[40]

Duaglo and Claimant do not reference intervention under Rule 24 or whether they seek mandatory or permissive intervention.  Thus, they fail to address any of Rule 24's requirements. But even if they had addressed Rule 24,[41] they further fail to meet any of its requirements.

---

[37] Fed. R. Civ. P. 24(a), (b).

[38] *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005).

[39] Fed. R. Civ. P. 24(b).

[40] *Elliott Indus.*, 407 F.3d at 1103 (quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001)).

[41] In their Reply, Duaglo and Claimant briefly contend that Duaglo is entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a).  They raise this argument for the first time in the reply brief and thus the argument is untimely.

As to timeliness, Duaglo knew of its interest in the case for quite some time. On December 13, 2023, Duaglo and Defendant executed an Amendment to their original contract. In this written Amendment, Duaglo agreed to the lower re-purchase price of $155,027.04 (instead of the original purchase price of $167,708.59) from Defendant. This Amendment also provided that the Government would file a partial release of the judgment lien in exchange for all the funds due to the seller being placed in escrow at Security 1st. On December 14, 2023, Duaglo conveyed the Property to Defendant, and Defendant conveyed the Property to the new purchasers. Duaglo received its $155,027.04. After the other costs of the sale, the remaining $74,573.37 was placed in escrow at Security 1st.

In February 2024, the Government applied for, and received, a Writ of Garnishment to the funds held by Security 1st. The Government provided Notice of the Garnishment on February 9, 2024. Generally, 28 U.S.C. § 3202(c) and (d) provide that an interested party has 20 days to claim an interest, request a hearing, or move to quash. Within this 20-day time period, Claimant filed an Objection to this Writ of Garnishment, which has been extensively discussed above.[42] Duaglo did not. Instead, Duaglo first requested intervention into the garnishment proceeding over seven months after the Notice and three weeks after the Court held a hearing on Claimant's Objection. Thus, Duaglo's request for intervention is extremely untimely and is not warranted under either Rule 24(a) or (b).[43]

---

[42] Defendant also filed an Exemption Claim.

[43] The Court recognizes that Claimant attempted to assert Duaglo's alleged right to $12,681.58 in his Second Objection to the Writ of Continuing Garnishment on June 24, 2024. However, Claimant did not have standing to make this request. Furthermore, as will be discussed, Duaglo has no valid legal basis to this money.

In addition, mandatory intervention requires the party to claim an interest relating to the property.  Although the Court recognizes that Duaglo claims an interest to the Property, it does not claim a *valid* interest.  The facts demonstrate that Duaglo released its interest in the Governeour Street Property when it signed the December 13, 2023 Amendment lowering the purchase price to $155,027.04.  This amount is all Duaglo is entitled to, and Duaglo received that amount on December 14, 2023 when it executed the statutory warranty deed and transferred the property.  Duaglo cannot now revive the original agreement between it and Defendant.  Thus, Duaglo cannot demonstrate that it has a valid interest in the Property.[44]  Accordingly, the Court denies Claimant's and Duaglo's Joint Motion to Intervene.

### 2.    *Duaglo's and Claimant's Motion to Distribute*

In this joint motion, Duaglo and Claimant request disbursement of the Security 1st escrowed funds in the amount of $74,573.37.  Specifically, they request $50,000 to Claimant, $5,000 for Claimant's attorney fees, and the remainder (approximately $19,500) to Duaglo.  First, as to the request for $5,000 in attorney fees and approximately $19,500 to Duaglo,[45] there is no basis in law or fact for these requests.[46]  Next, as to the requested $50,000 for Claimant, the Court

---

[44] *See, e.g., Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, 2008 WL 2066993, at *4 (D. Kan. May 14, 2008) (stating that although Rule 24 does not explicitly take into consideration the merits of a proposed claim, the futility of a proposed claim when determining whether intervention is appropriate is arguably "part of the inquiry under the second element of intervention of right under rule 24(a)").

[45] Because the Court denied the Joint Motion to Intervene, Duaglo also has no standing to request disbursement of the funds.

[46] Even if the Court were to consider the original contract between Duaglo and Defendant as to the disposition of the proceeds related to the Governeour Street Residence, that contract only provided Duaglo $12,681.55.  Duaglo now seeks to recover approximately $19,500—an increase of $7,000 with no basis in law or fact.  In addition, Duaglo and Claimant seek to obtain $5,000 in attorney fees from escrowed funds in which they have no legal right.

previously determined that Claimant does not have a valid mechanic's lien, and thus he is not entitled to this money. Accordingly, the Court denies the Joint Motion for Disbursement.

**C.      Defendant's Motion for Joinder**

Defendant filed a Motion for Joinder seeking to join Duaglo's and Claimant's Joint Motions for Intervention and Distribution of Funds. He simply reiterates Duaglo's and Claimant's contentions. He also specifically disavows any interest in the escrowed funds.[47] The Court grants Defendant's motion to join in Duaglo's and Claimant's motions. However, for the reasons stated above, the Court denies both joint motions to intervene and for distribution of funds. Consequently, Defendant's motion for joinder provides him no relief.

**D.      The Government's Motion and Amended Motion for Order Restraining Property and Rights to Property**

On July 26, 2024, the Government filed a Motion for Order Restraining Property and Rights to Property Available for Payment of Restitution. It requested that the Court enter an order restraining Defendant, or any person or entity acting on his behalf, from completing any action that would affect or diminish the marketability or value of Defendant's real or personal property available to pay restitution. Defendant failed to timely respond to this motion. During the hearing on September 12, 2024, the Court noted its concerns with the overbreadth of the Government's motion.

In turn, the Government filed an Amended Motion for Order Restraining Property and Rights to Property. In this motion, the Government narrowed its request minimally. The

---

[47] Presumably, Defendant will not file any other objections to the disposition of these funds as he states to the Court that he disclaims any interest in them.

Government moves the Court for an order seeking to restrain Defendant, his representatives, agents, attorneys, associates, nominees, alter egos, and/or assignees from transferring, encumbering, or wasting Defendant's property or rights to property, whether held in his name, in the name of his nominee, and/or in the name of any alter ego business, except as expressly permitted by the Court. Defendant contends that the Government's Amended Motion is overbroad, lacks specific details as to what the Government seeks to restrain, and fails to state why it is necessary.

Here, the Court entered its restitution order on May 12, 2023, in the amount of $318,647.21. As of July 26, 2024—the most recent date for which the Government provided an update on the amount of restitution owed—Defendant's outstanding balance was $316,683.93. On March 26, 2024, the Government sought formal discovery from Defendant seeking financial information. In turn, Defendant filed a Motion to Quash or Motion for Sanctions. In the Court's Order ruling on Defendant's motion, the Court recognized the Government's right to use civil discovery when enforcing an order of restitution. The Court rejected Defendant's assertion that the discovery was excessive and burdensome. Thus, the Court denied Defendant's motion on June 13, 2024.

Defendant appealed this Order to the Tenth Circuit.[48] On July 23, 2024, the Court granted Defendant's Motion to Stay Enforcement of Memorandum and Order Pending Appeal. Thus, while this matter is on appeal, discovery cannot continue, and the Government cannot obtain additional information as to Defendant's financial condition and information.[49]

---

[48] The Court made other rulings in this Order due to Defendant's numerous motions.

[49] The Court notes that the appeal is moving slowly as Defendant only filed his initial brief on October 26, 2024, after requesting multiple extensions of time.

The Government contends that to maintain the status quo and ensure that Defendant's property and rights to property are still available upon resolution of Defendant's appeal, a restraining order is necessary. The Court, however, fails to see the necessity. First, an order restraining Defendant (and all representatives associated with him) from transferring, encumbering, or wasting Defendant's property does nothing to maintain the status quo as to discovery. Discovery is simply a tool to ascertain whether Defendant has any additional assets available for restitution. The Government seeks to go beyond the status quo. And there is already an Order of Restitution which operates as "a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986."[50] Although the Government contends that this lien does not necessarily prevent Defendant from transferring property, the fact remains that the lien is in place and protects the Government's interest.

In addition, other than directing the Court to broad authority for enforcing an order of restitution,[51] the Government does not direct the Court to any cases or authority supporting the imposition of a restraining order. Furthermore, in performing its own search, the Court found scant caselaw addressing this issue. The Court finds the lack of legal authority significant.

Finally, the Government's request is imprecise and overbroad. The Court recognizes that the Government cannot provide specific information as to the property it seeks to restrain due to its inability to obtain formal discovery. The Government, however, has some knowledge of

---

[50] 18 U.S.C. § 3613(c).

[51] The Government cites to general enforcement provisions (18 U.S.C. § 3664(m)(1)(A) and 28 U.S.C. 3202(a)) and to the All Writs Act, 28 U.S.C. § 1651.

Defendant's assets due to the Presentence Investigation Report ("PSI") that was prepared in this case on May 12, 2023.  Although the Court previously found, and still finds, that the Government is entitled to discovery as to Defendant's assets despite the PSI, the Government is not completely without knowledge.  Furthermore, the Government seeks to not only restrain Defendant but also his representatives, agents, attorneys, associates, nominees, alter egos, and/or assigns from transferring, encumbering, or wasting Defendant's property.  This request is not narrowly tailored, and the Government does not provide the Court with authority that it could restrain these individuals.  Accordingly, the Court denies the Government's Amended Motion for Order Restraining Property and Rights to Property Available for Payment of Restitution.

**IT IS THEREFORE ORDERED** that Claimant Charles Capps's Objection to Garnishment (entitled "Limited Appearance of Claimant Charles Capps to Object to Garnishment and to Provide Notice of Interpleader Action") (Doc. 174) is **OVERRULED**.

**IT IS FURTHER ORDERED** that the Government's Motion for Order Restraining Property and Rights to Property Available for Payment of Restitution (Doc. 207) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Government's Amended Motion for Order Restraining Property and Rights to Property Available for Payment of Restitution (Doc. 211) is **DENIED**.

**IT IS FURTHER ORDERED** that Charles Capps's and Duaglo LLC's Joint Motion for Distribution of Funds (Doc. 215) is **DENIED.**

**IT IS FURTHER ORDERED** that Charles Capps's and Duaglo's Joint Motion to Allow Intervention of Duaglo, LLC (Doc. 217) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Joinder (Doc. 219) is

**GRANTED.**

**IT IS SO ORDERED**.

Dated this 5th day of November, 2024.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE