Michael R. Capps (Fed. Reg. No. 66142-509)
Federal Prison Camp - Florence
P. O. Box 5000
Florence, CO 81226

*Inmate, Pro Se*

---

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.     22-CR-10073-EFM |
| *Plaintiff,* | |
| v. | ***MOTION FOR APPOINTMENT OF COUNSEL*** |
| MICHAEL R. CAPPS, | |
| *Defendant.* | (*VERIFIED*) |

TO THE HONORABLE ERIC F. MELGREN, UNITED STATES DISTRICT JUDGE:

Michael R. Capps respectfully moves this Court pursuant to 18 U.S.C. § 3006A(a)(2)(B) to appoint counsel to represent him in his pending motion for compassionate release. This is not a routine request for legal assistance. Mr. Capps faces a documented medical emergency that has deteriorated into a life-threatening cardiovascular crisis requiring immediate expert medical interpretation beyond any reasonable expectation of pro se capability.

The central question before this Court is whether FPC Florence can constitutionally manage a veteran's severe sleep apnea and resulting hypertensive crisis that has produced blood pressure readings of 206/102 mmHg—levels that medical literature confirms create imminent risk of stroke or cardiac arrest. This constitutional determination cannot be made without independent medical expert testimony that Mr. Capps, despite his diligent efforts, simply cannot provide pro

se. The interests of justice not only support but compel the appointment of counsel to ensure this Court receives the professional medical analysis necessary for constitutional adjudication.

## I. THE MEDICAL EMERGENCY THAT DEMANDS EXPERT INTERPRETATION

Since this Court's February 2025 denial of Mr. Capps' initial compassionate release motion, his medical condition has deteriorated into a documented cardiovascular emergency. The progression is stark: from Stage 2 hypertension readings of 178/98 mmHg in March 2025 to sustained hypertensive crisis exceeding 206/102 mmHg by late June 2025, despite maximum dual antihypertensive therapy with Lisinopril 40mg and Amlodipine 5mg daily.

These numbers alone tell only part of the story. The medical complexity underlying Mr. Capps' crisis involves the intricate interaction between severe obstructive sleep apnea (documented at 129.1 events per hour with oxygen desaturations to 52%), systematic medication withdrawal from a carefully managed VA regimen, testosterone deficiency (plummeting from 900 ng/dL to 106 ng/dL), and service-connected PTSD. Each condition compounds the others in ways that require sophisticated medical analysis to understand, much less to present persuasively to a court.

The constitutional question—whether FPC Florence's medical care meets the standard established in *Estelle v. Gamble*—cannot be answered without expert medical testimony establishing what constitutes adequate care for such complex, interrelated conditions. The 2017 American College of Cardiology/American Heart Association guidelines defining hypertensive crisis at ≥180/120 mmHg provide the clinical framework, but translating Mr. Capps' readings of 206/102 mmHg into constitutional analysis requires the kind of medical expertise that appointed counsel could provide through qualified experts.

## II. WHY CONSTITUTIONAL MEDICAL CARE CLAIMS REQUIRE PROFESSIONAL REPRESENTATION

The Supreme Court's decision in *Estelle v. Gamble* established that the Eighth Amendment requires more than minimal medical care—it demands care that meets professional medical standards. 429 U.S. 97, 104 (1976). Determining whether institutional care satisfies this constitutional threshold requires expert medical testimony comparing the treatment provided against established professional standards. This is precisely the type of complex constitutional claim that the "interests of justice" standard in 18 U.S.C. § 3006A(a)(2)(B) was designed to address.

Mr. Capps' case exemplifies why constitutional medical care claims exceed pro se capacity. His sleep apnea requires continuous positive airway pressure (CPAP) therapy—when corrections officers destroyed his CPAP device in March 2025, FPC Florence's operational constraints prevented timely replacement. The facility operates a single 30-minute sick call window once weekly for all 311 inmates, creating what can only be described as systematic rationing of medical access. Whether this operational framework meets constitutional standards requires expert testimony on emergency medical care protocols and institutional medical capability standards.

The constitutional analysis becomes even more complex when considering the documented pattern of medical record falsification at FPC Florence. Mr. Capps' motion establishes that medical staff created fictitious records of physician examinations that never occurred—records containing factual impossibilities that institutional administration subsequently confirmed were false. When the administrative remedy process itself has been corrupted by document alteration, as evidenced by the contemporaneous Payne case where staff used correction fluid to remove allegations of medical falsification, the constitutional violation transcends mere medical negligence and enters the realm of deliberate indifference.

This is sophisticated constitutional litigation requiring professional legal analysis. The intersection of Estelle v. Gamble deliberate indifference standards, U.S.S.G. § 1B1.13(b)(1)(C) policy requirements, and complex medical evidence creates legal questions that fundamentally exceed pro se capacity, regardless of Mr. Capps' intelligence or diligence.

### III. THE INSTITUTIONAL BIAS THAT DEMANDS INDEPENDENT EXPERT REVIEW

Perhaps most compelling is the documented pattern of institutional medical bias at FPC Florence that renders BOP medical assessments inherently unreliable for constitutional analysis. The evidence of systematic medical inadequacy at this facility is overwhelming: recent federal court decisions in *United States v. Bovis*, *United States v. Paradis*, and *United States v. Sosa* all granted compassionate release based on inadequate medical care, with one court specifically finding blood pressure treatment "incomprehensible and very far below standards."

The constitutional problem extends beyond isolated medical errors to systematic deception. While FPC Florence medical staff privately acknowledged their "inability to provide the specialized mental health care Mr. Capps requires," the Bureau simultaneously assured Senator Lankford that the facility maintains adequate resources and that "Mr. Capps has been in regular communication with Psychology and departmental staff." This contradiction between internal acknowledgments of inadequacy and external assurances to Congress demonstrates institutional incentives to misrepresent medical capabilities rather than provide constitutionally adequate care.

Independent medical expert review becomes essential when institutional medical assessments have been compromised by documented falsification and systematic misrepresentation. Constitutional adjudication requires objective medical analysis untainted by the institutional bias that pervades BOP medical evaluations. Only appointed counsel with access to

independent medical experts can provide this Court with the reliable medical analysis necessary for constitutional determination.

The Shores testosterone study that Mr. Capps references provides a stark example of why expert interpretation is essential. The study documented 20.7% mortality rates for men with testosterone levels ≤250 ng/dL compared to 10.3% for treated patients, with Mr. Capps' current level of 106 ng/dL placing him in the highest-risk category. Translating this medical literature into constitutional adequacy standards requires the kind of professional medical expert testimony that appointed counsel could provide but that Mr. Capps cannot access pro se.

## IV. THE TENTH CIRCUIT'S RECOGNITION OF EXCEPTIONAL CIRCUMSTANCES

The Tenth Circuit has recognized that appointment of counsel in post-conviction proceedings may be warranted when exceptional circumstances demonstrate that the interests of justice require professional representation. *Swazo v. Wyoming Dep't of Corr. State Penitentiary*, 23 F.3d 332, 333 (10th Cir. 1994). Mr. Capps' case presents precisely such exceptional circumstances through the convergence of life-threatening medical emergency, complex constitutional claims, and documented institutional medical bias.

The circuit's analysis in cases like *McCall v. Benson*, 114 F.3d 754 (8th Cir. 1997), establishes that appointment is appropriate when case complexity exceeds a defendant's capacity for adequate self-representation. Here, the intersection of cardiovascular medicine, sleep disorder treatment protocols, constitutional law, and federal sentencing guidelines creates legal and medical complexity that no reasonable pro se defendant could adequately navigate, regardless of education or effort.

More fundamentally, the Due Process Clause requires meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). When constitutional medical care claims require expert

medical testimony that an indigent defendant cannot afford, the constitutional guarantee of meaningful access becomes meaningless without appointed counsel. Mr. Capps cannot present his Eighth Amendment claims adequately without medical expert testimony costing $5,000-$15,000 that his current status makes impossible to obtain.

The constitutional stakes distinguish this case from routine post-conviction proceedings. Mr. Capps faces imminent risk of stroke, cardiac arrest, or death from documented hypertensive crisis. The irreversible nature of cardiovascular events creates time-sensitive circumstances where inadequate legal representation could result in irreversible harm. These stakes warrant the enhanced procedural protections that appointed counsel provides.

## V. THE FUNDAMENTAL FAIRNESS THAT APPOINTED COUNSEL WOULD RESTORE

The current procedural posture creates a fundamental imbalance that appointed counsel would remedy. The Bureau of Prisons has access to institutional medical staff, government attorneys, and medical experts to defend against constitutional medical care claims. Mr. Capps has none of these resources. This disparity becomes particularly acute when the institutional medical assessments have been compromised by documented falsification and systematic misrepresentation.

Appointed counsel would restore procedural balance by providing access to independent medical experts who could conduct objective review of Mr. Capps' medical records and institutional care. Such experts could establish professional standards for emergency cardiovascular care, evaluate institutional medical adequacy, and provide the objective medical analysis that constitutional adjudication requires. Without this professional assistance, Mr. Capps cannot adequately present the constitutional claims that his documented medical emergency has created.

The broader public interest also supports appointment. This case presents fundamental questions about constitutional medical care standards in federal facilities. The documented pattern of medical record falsification, systematic healthcare rationing, and judicial intervention for medical inadequacy at FPC Florence raises institutional accountability issues that extend beyond Mr. Capps' individual circumstances. Professional legal presentation would ensure that these constitutional compliance questions receive adequate attention, serving the public interest in institutional accountability.

The precedential implications are significant. If constitutional medical care claims can be adequately presented pro se without expert medical testimony, then the Estelle v. Gamble standard becomes meaningless for indigent defendants who cannot afford medical experts. Appointed counsel would ensure that constitutional medical care protections remain meaningful rather than illusory for those who need them most.

## VI. THE ENHANCED INVESTIGATION AND PRESENTATION THAT PROFESSIONAL REPRESENTATION WOULD PROVIDE

Appointed counsel would provide investigative capabilities essential for adequate constitutional claim presentation that pro se status cannot match. Professional subpoena power could obtain complete medical records, expert medical record review could identify systematic patterns of inadequate care, and comparative institutional analysis could establish constitutional adequacy baselines. These investigative tools are necessary for constitutional medical care claims but unavailable to pro se defendants.

The complexity of medical literature integration provides another example of why professional representation is essential. Mr. Capps' motion references sophisticated studies like the Javaheri cardiovascular mortality research and the Shores testosterone deficiency analysis, but translating this medical literature into constitutional legal arguments requires professional

expertise in both medicine and constitutional law. Appointed counsel with access to medical experts could properly integrate this evidence within established legal frameworks in ways that exceed pro se capacity.

Discovery limitations further demonstrate the need for professional representation. Investigating systematic institutional medical inadequacy patterns, accessing comparative institutional medical capability information, and developing comprehensive expert medical testimony supporting constitutional claims all require professional legal capabilities that pro se representation cannot provide. These limitations create fundamental gaps in Mr. Capps' ability to present constitutional claims adequately.

The time-sensitive nature of cardiovascular emergency adds urgency to these considerations. Delays caused by inadequate pro se representation could result in irreversible harm in circumstances where professional representation could ensure timely, adequate case presentation. Appointed counsel would provide the professional efficiency necessary for emergency medical circumstances while ensuring comprehensive constitutional claim development.

## CONCLUSION

Mr. Capps faces a documented cardiovascular emergency that has created complex constitutional medical care claims requiring professional legal representation and independent medical expert testimony. The intersection of life-threatening medical emergency, sophisticated constitutional law, and documented institutional medical bias creates exceptional circumstances that compel appointment of counsel under the interests of justice standard.

This Court cannot adequately evaluate the constitutional adequacy of FPC Florence's medical care without independent medical expert testimony establishing professional standards

and evaluating institutional compliance. Mr. Capps cannot provide this essential expert testimony pro se, creating a fundamental gap that appointed counsel would remedy through access to qualified medical experts.

The documented pattern of medical record falsification and systematic institutional misrepresentation renders BOP medical assessments inherently unreliable for constitutional analysis. Independent expert review becomes essential for objective constitutional adjudication, but such review is available only through appointed counsel with authority to retain medical experts.

The constitutional stakes—imminent risk of stroke, cardiac arrest, or death—warrant enhanced procedural protections through appointed counsel. The irreversible nature of cardiovascular events distinguishes this case from routine post-conviction proceedings and justifies the professional representation necessary for adequate constitutional claim presentation.

The interests of justice require appointed counsel to ensure meaningful access to the courts in circumstances where constitutional medical care claims exceed any reasonable expectation of pro se capacity. Mr. Capps has demonstrated extraordinary diligence in presenting his case pro se, but the medical and legal complexity now requires professional assistance that only appointed counsel can provide.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Capps respectfully requests that this Court:

- **GRANT** this Motion for Appointment of Counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B);

- **APPOINT** qualified counsel to represent Mr. Capps in his pending Second Motion for Reduction in Sentence under 18 U.S.C. § 3582(c)(1)(A);

- **AUTHORIZE** appointed counsel to retain necessary medical experts to provide independent review and testimony regarding Mr. Capps' medical conditions and institutional care adequacy;

- **EXPEDITE** consideration of this motion given the life-threatening nature of Mr. Capps' cardiovascular crisis; and

- **GRANT** such other relief as this Court deems just and proper.

I, Michael R. Capps, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed and submitted this 11th day of July, 2025, at Florence, Colorado.

*[signature]*

**Michael R. Capps**
Register Number: 66142-509
FPC Florence
PO Box 6000
Florence, CO 81226