# UNITED STATES DISTRICT COURT

## District of Kansas
### (Wichita Docket)

UNITED STATES OF AMERICA,

        Plaintiff,

v.                    CASE NO.: <u>21-10073-EFM</u>

MICHAEL CAPPS,

        Defendant.

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE and MOTION TO APPOINT COUNSEL
### (Docs. 286 and 287)

---

APPEAR NOW the United States of America, by and through Jared S. Maag, Assistant United States Attorney, and respectfully submit the following in response to the defendant's second motion for compassionate release (Doc. 287) and his motion to appoint counsel (Doc. 286).

## I.      <u>RELEVANT PROCEDURAL HISTORY</u>

On December 21, 2022, a petit jury sitting in Wichita, Kansas convicted the defendant on multiple counts of fraud, money laundering, and false statements related to

1

him illegally obtaining federal funds relative to COVID-19 relief.    (Doc. 73.)

On May 11, 2023, the defendant was committed to the custody of the United States Bureau of Prisons (BOP) for 27 months.    (Doc. 98.)    The defendant received an appeal bond, and self-surrendered to prison officials at FCI Florence on December 31, 2024. (Doc. 247 at 2.)

The defendant's current release date is September 29, 2026.

On August 13, 2024, the United States Court of Appeals for the Tenth Circuit affirmed the defendant's convictions and controlling sentence.    *United States v. Capps*, 112 F.4th 887 (10th Cir. 2024).

On January 25, 2024, shortly after arriving at FCI Florence, the defendant filed his first motion seeking compassionate release.    (Doc. 247.)

On February 27, 2025, this Court issued an Order denying the defendant's motion. (Doc. 274; Doc. 262.)    The defendant voluntarily withdrew his appeal to the Tenth Circuit challenging this Court's decision to deny compassionate release.    *United States v. Capps*, No. 25-3037, Doc. 10-1 (Apr. 29, 2025).

On July 14, 2025, the defendant filed his second motion seeking compassionate release.    (Doc. 287.)

## II.    DEFENDANT'S ARGUMENTS

The defendant moves this Court to immediately release him due to a life-threatening cardiovascular crisis that is not being properly treated by the BOP.    (Doc. 287 at 1.)    He further submits that his "exceptional rehabilitation efforts" warrant his immediate release.

2

(*Id*. at 18.)

### III.    GOVERNMENT'S RESPONSE

#### A.    Exhaustion of Administrative Remedies

As a general matter, federal courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed; however, this rule is subject to a limited number of narrow exceptions.    *Freeman v. United States*, 564 U.S. 522, 526 (2011).    Section 3582(c)(1)(A) qualifies as one of those exceptions and provides that a district court is authorized to grant a motion for reduction of sentence whether filed by the Director of the BOP or upon motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."    18 U.S.C. § 3582(c)(1)(A).

As required by statute, however, the defendant must first demonstrate exhaustion of his available administrative remedies with the BOP before submitting an appeal to this Court.    *Hemmelgarn*, 15 F.4th at 1030-31 (holding that Section 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule, and that the defendant must demonstrate proof of exhaustion).    The government is satisfied that the defendant has exhausted his available remedies with the BOP as to the claims he presents in the current motion.    (Doc. 285-7.)

3

B.    <u>The Three-Part Test</u>

Per Section 3582(c)(1)(A), a district court may grant a motion for sentence reduction *only* if the following three requirements are met: (1) there are extraordinary and compelling reasons warranting the reduction; (2) the reduction is consistent with the applicable policy statements issued by the United States Sentencing Commission; and (3) the district court considers the factors set forth in Section 3553(a), to the extent they are applicable.    (*Ibid*). The defendant bears the burden of demonstrating that he meets these requirements for compassionate release.    *United States v. Crespin*, No. 23-2111, 2024 WL 3084972, at *5 (10th Cir. June 21, 2024) (reaffirming that "the defendant carries the burden on a motion for compassionate release to show he is entitled to relief").

To satisfy the requirements of Section 3582(c)(1)(A), a district court must engage in a three-step process.    *United States v. McGee*, 992 F.3d 1035, 1042-43 (10th Cir. 2021) (adopting test established in *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)); *see also United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021) ("Because this three-step test is consistent with the plain language of [Section 3582(c)(1)(A)], we adopt the test for use in this circuit.").

At step one, a district court must find whether extraordinary and compelling reasons warrant a sentence reduction.    *McGee*, 992 F.3d at 1043.    To that end, "the most plausible interpretation of . . . [Section] 3582(c)(1)(A)(i) is that Congress intended to afford district courts with discretion, in carrying out the first step of the statutory test . . . [and] to independently determine the existence of 'extraordinary and compelling reasons,' and for

4

the discretion to be circumscribed under the second step of the statutory test by requiring district courts to find that a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id*. at 1044.

At step two, a district court must determine whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. at 1048. As highlighted by the Court in *McGee*, the Sentencing Commission's description of what constitutes "extraordinary and compelling reasons" must be viewed as a "general policy statement" rather than the equivalent of a statutory definition. *Id*. at 1048. As the Court in *McGee* opined:

> . . . in applying the first part of [Section] 3582(c)(1)(A)'s statutory test, [district courts] have the authority to determine for themselves what constitutes "extraordinary and compelling reasons," but that this authority is effectively circumscribed by the second part of the statutory test, i.e., the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission pursuant to [Sections] 994(a)(2)(C) and (t). In other words, we conclude that Congress did not, by way of [Section] 994(t), intend for the Sentencing Commission to exclusively define the phrase "extraordinary and compelling reasons," but rather for the Sentencing Commission to describe those characteristic[s] or significant qualities or features that typically constitute "extraordinary and compelling reasons," and for those guideposts to serve as part of the general policy statements to be considered by district courts under the second part of the statutory test in [Section] 3582(c)(1)(A).

*Id*. at 1045.

Finally, at step three, a district court must address the applicable factors under Section 3553(a). *Id*. at 1042-43. Importantly, a district court may deny compassionate release when any of the three prerequisites listed in Section 3582(c)(1)(A) is lacking and

need not address the other factors.    *Id*. at 1043 (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)); *see also United States v. Hald, et. al,* 8 F.4th 932, 942 (10th Cir. 2021) (reaffirming *McGee's* declaration that the three steps could be considered in any order); *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (same).    Conversely, when a district court determines that compassionate release is warranted, "it must of course address all three steps."    *McGee,* 992 F.3d at 1043 (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

Relevant here, Section 3582(c)(1)(A) itself requires that the reason for release be "extraordinary and compelling."    And, as the Court in *Maumau* noted, a sentence reduction must be supported by "a combination of factors" that warrant a sentence reduction for extraordinary and compelling reasons.    993 F.3d at 837; *Hald*, 8 F.4th at 938 n.4 ("The design of Congress in amending [Section] 3582(c)(1)(A) was not to create an open season for resentencing, after all, the title of the amendment speaks in terms of 'Compassionate' release . . ."); *see also United States v. Hunter*, 12 F.4th 555, 561-62 (6th Cir. 2021) (noting that while Congress has not defined what constitutes an "extraordinary and compelling" reason, the ordinary meaning of the words "extraordinary and compelling" are understood as "most unusual", "far from common", and "having little or no precedent"; and, "forcing, impelling, driving", respectively); *see also United States v. Wesley*, 60 F.4th 1277, 1286 (10th Cir. 2023) (noting that "there is a fair argument that 'extraordinary and compelling reasons,' by its own terms, excludes matters that stray too far from the core established by the Sentencing Commission . . .").

Finally, Section 3582(c)(1)(A)(i) provides that this Court "*may reduce*" the defendant's sentence.   The "use of 'may' is quintessential discretionary language." *United States v. Sutton*, 962 F.3d 979, 986 (7th Cir. 2020); *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020) ("This last requirement confirms an overarching point: The district court has substantial discretion.   The statute says that the district court "may" reduce a sentence if it finds the first two requirements met; it does not say that the district court *must* do so.   Even if those conditions are met, therefore, a district court may still deny relief if it finds that the "applicable" [Section] 3553(a) factors do not justify it.") (internal citations omitted).

## C.  <u>Section 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13</u>

Again, Section 3582(c)(1)(A)(i) reads in relevant part that "[a] court may not modify a term of imprisonment once it has been imposed except that—in any case—the court . . . may reduce a term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission."   Congress has thus plainly established that a district court considering a motion for compassionate release find that any approved reduction be "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*

In November of 2023, the Sentencing Commission's proposed amendment to Section 1B1.13 came into effect generally preserving the discretion district courts held to

consider any extraordinary and compelling reason for release.   Under Section 1B1.13, this Court is now directed to consider if the medical circumstances of the defendant, the age of the defendant, family circumstances, whether the defendant is or has been a victim of abuse, or served an unusually long sentence, constitute extraordinary circumstances warranting a sentence reduction. *See* Sections 1B1.13(b)(1)-(4), (6).   Section 1B1.13 also permits this Court to consider whether "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."

Finally, the Sentencing Commission's new policy reaffirms this Court's obligation to analyze the factors under Section 3553(a), namely, "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with ... training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a); U.S.S.G. § 1B1.13(a).

### D.    The Defendant's Medical Concerns

Again, the defendant submits that he must immediately be released from custody because personnel from the BOP are failing to adequately address his myriad health problems, to include a "life-threatening cardiovascular crisis."   (Doc. 287 at 1.) For the following reasons, the defendant's arguments must be rejected.

8

Relevant here, under Section 1B1.13(b)(1)(A)-(C), extraordinary and compelling reasons exist if (A) the defendant is suffering from a terminal illness, (B) the defendant is suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover," or (C) the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." The defendant submits that he qualifies for release having satisfied the requirements of Section 1B1.13(b)(1)(C). (Doc. 287 at 2.)

Having once again reviewed the defendant's most current medical records as provided by personnel at the BOP on July 24, 2025, Sections A and B of 1B1.13 clearly do not apply. The defendant is not suffering from a terminal illness, nor is he unable to provide self-care within his current correctional facility. Section C, upon which the defendant primarily relies, is inapplicable because the records do not demonstrate that he is suffering from a condition that requires long-term or specialized care that is not being provided by the BOP.

As the records demonstrate, the defendant had a recent meeting with a medical provider on July 23, 2025, wherein his diet was discussed as well as his exercise regime. The records show that the defendant is taking a series of medications to address his blood pressure and that he is satisfied with the prescriptions being administered. He further

9

remarked to the provider that his current CPAP machine is working better. The defendant's testosterone levels are low and recommendations for certain medications have been discussed with the defendant. The records plainly show that the defendant has, as of 7/23/25, a plan in place to address his medical concerns and that he is comfortable with that plan. Simply put, BOP officials are providing the necessary care to the defendant, and he is fully accepting of that care.

The defendant simply cannot satisfy his burden of demonstrating that his current medical condition, or the alleged failure by BOP officials to address his concerns, is "extraordinary" as contemplated by Section 3582(c) and Section 1B1.13(b)(1)(C). As before, the defendant is receiving regular treatment and care for his conditions, and he cannot demonstrate—at a level where his release would be warranted—that the BOP is wholly incapable of caring for an inmate with his medical concerns.

Again, the defendant's medical problems are being addressed; and his medical records simply do not support his claims of serious medical concerns as he describes in his motion. Thus, the defendant's arguments on this ground must be denied as he cannot establish extraordinary and compelling reasons for compassionate release as contemplated by Section 3582(c) and Section 1B1.13(b)(1) of the Guidelines. *Hunter*, 12 F.4th at 561-62 (noting that while Congress has not defined what constitutes an "extraordinary and compelling" reason, the ordinary meaning of the words "extraordinary and compelling" are understood as "most unusual", "far from common", and "having little or no precedent"; and, "forcing, impelling, driving", respectively).

###### E.    Rehabilitation

Next, the defendant maintains that his immediate release is warranted because of his "exceptional rehabilitation efforts and programming completion."  (Doc. 287 at 18.) While the defendant's efforts towards rehabilitation are commendable, law and precedent plainly state that rehabilitation alone is insufficient to warrant compassionate release. *United States v. Mata-Soto*, 861 F. App'x 251, 255 (10th Cir. 2021) (noting that the district court "correctly determined that rehabilitation alone could not constitute an extraordinary and compelling reason warranting release"); 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").  Independently, the defendant's arguments fail to merit relief, and they likewise fail to warrant relief given that he has fallen short of establishing any other "extraordinary and compelling" reason for release from custody.

###### F.    Section 3553(a) Factors

Finally, to the extent the defendant can establish an extraordinary and compelling reason for release, satisfying that burden does not resolve the defendant's entitlement to a reduction in sentence or release from confinement.  This Court must still consider whether the defendant poses a danger to the community and other relevant factors under Section 3553(a) before making the ultimate decision on release.  Accordingly, this Court must

11

consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.  *See* 18 U.S.C. § 3553(a)(1)–(6).

As reflected in the Tenth Circuit's decision affirming the defendant's convictions and sentence, he "was convicted on 12 counts related to fraudulently obtaining federal funds intended for COVID-19 relief."  *Capps*, 112 F.4th at 888.  The total amount of fraud attributed to the defendant was $498,200.00.  (Doc. 97 at 19, ¶ 71.)  As of the date of this filing has served approximately 7.5 months of a 27-month sentence.  Granting the defendant compassionate release would result in a sentence reduction of approximately 72%.  As the government noted in its response a mere 5 months ago, such a reduction is unwarranted and completely unjust under the circumstances.  (Doc. 261 at 14.)  Once again, none of the factors under Section 3553(a) balance in favor of the defendant receiving such an enormous reprieve given the seriousness of his conviction, and this Court's decision from February of this year finding the same should not be altered.  (Doc. 262 at 8.)

## IV.    <u>Appointment of Counsel</u>

It is well-settled that a *pro se* defendant has no constitutional right to counsel beyond the direct appeal of his criminal conviction.  *Coronado v. Ward*, 517 F.3d 1212, 1218

12

(10th Cir. 2008).    To that end, the right to counsel clearly does not extend to motions seeking compassionate release.    *United States v. Hemmelgarn*, 15 F.4th 1027, 1032 (10th Cir. 2021) (". . . there is no constitutional right to counsel to aid in a defendant's request for compassionate release."); *see also United States v. Campos*, 630 F. App'x 813, 816 (10th Cir. 2015) (unpub.) ("No right to counsel extends to a [Section] 3582(c)(2) motion."). In determining whether to appoint counsel, a district court generally weighs several factors, to include: (1) the merits of the defendant's claims, (2) the nature of the factual issues raised, (3) the defendant's ability to argue his claims independent of counsel's assistance, and (4) the complexity of the arguments raised.    *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).

As stated above, the defendant's arguments do not demonstrate extraordinary and compelling reasons for compassionate release.    Moreover, the defendant has sufficiently pled his claims, and the arguments he raises relative to his current medical condition are not complex.

The defendant bears the burden to convince this Court to appoint counsel. *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985).    He has fallen short of that obligation; consequently, his motion to appoint counsel must be denied.

## V.    <u>CONCLUSION</u>

The defendant has once again failed to establish extraordinary and compelling reasons for this Court to consider his compassionate release.    And a sentence reduction would continue to run afoul of the factors under Section 3553(a).    Accordingly, the

defendant's motion for compassionate release must be denied.

Respectfully submitted,

DUSTON J. SLINKARD
Acting United States Attorney
District of Kansas

By:      /s/ *Jared S. Maag*

JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney
290 Carlson Federal Bldg.
444 SE Quincy St.
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
jared.maag@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July 2025, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system, which will serve a copy of the same on all parties who have entered an appearance in this matter, and that a true and correct copy was mailed via USPS, first class, postage prepaid to:

Michael Capps
Reg. No. 66142-509
FCI Florence
FEDERAL CORRECTIONAL INSTITUTION
PO BOX 6000
FLORENCE, CO   81226

By:      /s/ *Jared S. Maag*

JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney

14