IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 21-10073-EFM

MICHAEL R. CAPPS,

    *Defendant.*

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Michael Capps's Second Motion to Reduce Sentence (Doc. 285). He seeks early release from prison and conversion of his remaining sentence to supervised release due to medical circumstances. The Government opposes Defendant's motion. For the reasons stated below, the Court denies Defendant's motion.

**I.    Factual and Procedural Background**

On December 21, 2022, Defendant was found guilty on 12 counts, including one count of bank fraud, three counts of false statements to a bank and the Small Business Administration, four counts of wire fraud, and four counts of money laundering. On May 11, 2023, the Court sentenced Defendant to 27 months' imprisonment, to be followed by two years of supervised release.[1]

---

[1] Defendant was also ordered to pay $318,647.21 in restitution, and the Court entered a forfeiture judgment in the amount of $178,193.17. The Court will not set forth all the restitution issues here. Suffice to say, there have

Defendant appealed his conviction to the Tenth Circuit on May 17, 2023, and this Court allowed Defendant's release during his appeal.

On August 13, 2024, the Tenth Circuit affirmed this Court's judgment, and the mandate was issued on October 24, 2024. On November 18, 2024, Defendant filed a motion for extension of time to voluntarily surrender and requested the self-surrender date of December 31, 2024. The Court granted Defendant's request, and Defendant surrendered on that date.

On January 25 and January 26, 2025—a mere three weeks after reporting to prison—Defendant filed Motions to Reduce Sentence, requesting immediate release from prison.[2] On February 1, 2025, Defendant filed a third motion, entitled a "Renewed Motion to Expedite Consideration of Defendant's Motion for Compassionate Release." In that motion, he sought expedited consideration of his motions.

Defendant asserted that his father's health was poor and that he was the only caregiver available to help him. In addition, Defendant stated that he faced ongoing health risks due to the prison's alleged inability to maintain his CPAP device and alleged lack of access to mental health treatment. The Government opposed Defendant's motions.

The Court denied Defendant's motions finding that Defendant failed to present an extraordinary or compelling reason warranting release. In addition, the Court found that the sentencing factors enumerated in 18 U.S.C. § 3553(a) further bolstered the Court's decision to

---

been numerous disputes. Defendant appealed those issues, but the Tenth Circuit recently determined that it lacked jurisdiction to hear Defendant's appeal because enforcement proceedings remain ongoing.

[2] The Federal Public Defender's office declined representation of Defendant, and Defendant proceeded pro se on those motions.

deny Defendant's motions. Defendant appealed the Court's decision to the Tenth Circuit, but he then voluntarily withdrew his appeal.

On July 11, 2025, Defendant filed this Second Motion to Reduce Sentence.[3] In this Motion, he claims that he is facing a medical crisis that cannot be handled by FPC Florence (the institution in which he is incarcerated).[4] In addition, he contends that other factors support his early release from prison. The Government opposes Defendant's Motion.

## II.     Legal Standard

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), allows a defendant to seek early release from prison provided certain conditions are met. First, a motion for compassionate release may only be filed if: (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf;" or (2) 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[5] Exhaustion is a mandatory claim-processing rule in the Tenth Circuit.[6]

If a defendant satisfies the exhaustion requirement, district courts use a three-part test when deciding a defendant's motion.[7] This test requires the Court to consider whether (1) "extraordinary and compelling reasons" warrant the sentence reduction, (2) "such reduction is consistent with

---

[3] Defendant is now represented by counsel, who is serving pro bono.

[4] Defendant has since been moved from this facility, and the Court will discuss this factor later in this Order.

[5] 18 U.S.C. § 3582(c)(1)(A).

[6] *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021).

[7] *United States v. McGee*, 992 F.3d 1035, 1042–43, (10th Cir. 2021) (quoting *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)); *see also United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021) (discussing and employing the same three-part test).

applicable policy statements issued by the Sentencing Commission," and (3) reduction is consistent with the applicable sentencing factors set forth in 18 U.S.C. § 3553(a).[8] If the Court denies the motion because the defendant fails to meet one of the prerequisites, it may do so without addressing all three factors.[9] If, however, the Court grants the motion, the Court must address all steps.[10]

### III. Analysis

Defendant requests early release from prison arguing that his medical circumstances, and the way in which the prison is managing them, warrant early release. The Government asserts that Defendant is not an appropriate candidate for a sentence reduction. The Court finds that Defendant cannot establish an extraordinary and compelling reason warranting a reduction in sentence.

#### A.   Extraordinary and Compelling Reasons

The Government states that it is satisfied that Defendant exhausted his available remedies with the BOP as to the claims he presents in the current Motion.[11] Accordingly, the Court will proceed directly to the determination of whether Defendant presents an extraordinary or compelling reason for early release.

---

[8] *McGee*, 992 F.3d at 1042 (citations and internal quotation marks omitted).

[9] *Id.* at 1043 (citation omitted); *see also United States v. Hald*, 8 F.4th 932, 942–43 (10th Cir. 2021) (explicitly stating that a district court can choose which order to consider the three steps, and "[i]f the most convenient way for the district court to dispose of a motion for compassionate release is to reject it for failure to satisfy one of the steps, we see no benefit in requiring it to make the useless gesture of determining whether one of the other steps is satisfied.").

[10] *McGee*, 992 F.3d at 1043 (citation omitted).

[11] Administrative exhaustion is a claim-processing rule, and it can be waived if not asserted by the government. *See Hemmelgarn*, 15 F.4th at 1030.

In determining whether a defendant presents an extraordinary and compelling reason warranting a sentence reduction, the Court considers whether the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[12] Section 1B1.13(b)(1) provides that the medical circumstances of the defendant may provide an extraordinary and compelling reason for release.[13] Specifically, a consideration under § 1B1.13(b)(1)(C) is whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."[14] In addition, U.S.S.G § 1B1.13(b)(5) states that another factor may be "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."

Defendant first relies on § 1B1.13(b)(1)(C) and asserts that he suffers from severe sleep obstructive apnea that has resulted in progressive cardiovascular deterioration.[15] In fact, he asserts that he collapsed and was unconscious for approximately one minute in August 2025. He claims that FPC Florence lacks the operational capacity and specialized resources to manage his interrelated sleep apnea and hypertension, and that pre-incarceration, these conditions were successfully managed through the Veterans Affairs ("VA") healthcare system.[16]

---

[12] 18 U.S.C. § 3582(c)(1); *see also McGee*, 992 F.3d at 1042.

[13] U.S.S.G. § 1B1.13(b)(1).

[14] U.S.S.G. § 1B1.13(b)(1)(C). Sections 1B1.13(b)(1)(A) and (B) are wholly inapplicable to Defendant.

[15] Defendant states that his CPAP mask was destroyed during a unit search in March 2025, and he was without the mask for approximately three months. It has since been replaced, and Defendant has a CPAP mask.

[16] The Court notes that Defendant highlights certain blood pressure readings as demonstrating a hypertensive crisis. Yet, Defendant only cites to the readings that support his contention. Longitudinally, Defendant's medical

In addition, Defendant relies upon § 1B1.13(b)(5) as further support that he should be granted early release. He claims that he has completed or enrolled in numerous educational programs during his incarceration, despite his medical crisis and encountering institutional barriers. In addition, he claims that he is being denied PTSD mental health treatment in FPC Florence and that FPC Florence's withdrawal of some of his medications has exacerbated the deterioration of his mental and physical conditions.

Finally, Defendant contends that the prison is falsifying his medical records. He contends that the falsification of his records, alongside the alleged institutional inability to provide adequate medical care,[17] transforms his case from medical negligence to a deliberate constitutional violation. Thus, he appears to assert that FPC Florence's alleged inadequacies rise to an Eighth Amendment violation.

An important consideration in this case is that after Defendant filed his Motion, he was transferred from FPC Florence to a residential reentry center ("RRC") in late September. Most of Defendant's complaints about his medical ailments and the alleged inadequate care relate to FPC Florence. Therefore, his concerns and complaints in his original motion are no longer applicable because Defendant is no longer incarcerated at that prison facility and is instead housed in an RRC.

In addition, Defendant's arguments about the alleged inadequacy of FPC Florence's medical care is more akin to a constitutional claim. "[A] motion for compassionate release is not

---

records also show lower blood pressure readings at different times. Thus, Defendant's alleged medical issues seem to be overstated.

[17] Defendant spends numerous pages discussing FPC Florence's alleged operational failures with regard to medical care.

the proper vehicle for such constitutional claims."[18] Thus, the Court will not review any alleged constitutional claims.

In Defendant's Reply, he argues that his transfer to an RRC does not resolve his Motion. However, in Defendant's Motion, he primarily argued about the alleged inadequacy of the care he was receiving for his medical issues at FPC Florence. Having now been transferred to the RRC, he changes the basis of his argument. He now states that the RRC is a BOP contract facility where inmates remain in federal custody. He contends that only his location has changed—not his legal status. Yet, in his Reply, Defendant primarily continues to argue about the care he received at FPC Florence where he is no longer incarcerated. In sum, based on the procedural posture of this case and the allegations in Defendant's Motion, Defendant does not establish an extraordinary or compelling reason warranting release.[19]

**B.**     **Section 3553(a) Factors**

The Court's conclusion is bolstered by a consideration of the applicable sentencing factors enumerated in 18 U.S.C. § 3553(a).[20] Some of these factors include the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, afford

---

[18] *United States v. Lougee*, 2022 WL 2064893, at *2 n.3 (D. Kan. June 8, 2022) (citations omitted).

[19] The Court notes that Defendant also recently filed a sealed motion for status conference regarding authorization of expert services (Doc. 317) which was ruled on in a separate Order. In that motion, Defendant states that his hypertensive crisis has not resolved in the RRC. Defendant's arguments, however, appear to be based on prior medical readings, and he did not provide the Court with sufficient information as to his current alleged medical ailments and/or the care he is now receiving. In addition, as noted above, Defendant appears to overstate his blood pressure readings as he selectively picks blood pressure readings from the record. Finally, the Court notes that Defendant previously argued that he and his family advocated for him to be transferred to an RRC for better medical care. Now that he has been transferred, his argument has shifted.

[20] *See* 18 U.S.C. § 3582(c)(1) (stating that the court should consider the factors set forth in § 3553(a) when determining the length of imprisonment).

adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentence disparities.[21]

As noted previously, Defendant was found guilty of 12 counts related to COVID-19 relief-related fraud and sentenced to 27 months' imprisonment in December 2022. Defendant highlights the non-violent nature of this crime and contends that he has received significant punishment. Yet, Defendant was sentenced to 27 months' imprisonment, was allowed release while he appealed his conviction to the Tenth Circuit, and was allowed extra time to self-surrender after the Tenth Circuit's mandate was issued. After he reported to prison on December 31, 2024, he requested release from prison after serving only 25 days. And although Defendant has now served approximately 12 months of his 27-month sentence, he was released to an RRC in September 2025 and thus only served approximately nine months in prison. He is now requesting supervised release for the remainder of his sentence which would mean he would serve less than half his sentence.

Furthermore, although Defendant's crime was non-violent, his crimes involved fraudulent statements to the federal government and money laundering with significant financial implications. Indeed, Defendant's convictions resulted in a judgment against him with restitution to be paid in the amount of $318,647.21.[22] As of August 2025, Defendant's outstanding restitution balance is approximately $316,296.17, and Defendant has frustrated or opposed every attempt by the Government to obtain the restitution that Defendant owes.[23] Thus, he has paid very little of the

---

[21] 18 U.S.C. § 3553(a).

[22] In addition, a forfeiture judgment was entered against Defendant in the amount of $178,193.17.

[23] As noted above, almost immediately after reporting to prison, Defendant sought his release too. This Motion is his second request for release from prison.

monetary amount of his judgment. And although Defendant may not pose a safety risk to the public for violent crimes, there may be the risk of recidivism related to fraudulent activity against others.

In sum, reducing Defendant's sentence to time served is unwarranted and would not reflect the seriousness of Defendant's criminal conduct nor provide adequate deterrence or appropriate punishment.[24] Accordingly, the Court finds that Defendant does not demonstrate extraordinary and compelling reasons to warrant his early release from prison.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Reduce Sentence (Doc. 285) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 8th day of January, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[24] Defendant requests a reduction in time served while he continues to disregard the other aspect of the sentence against him—the monetary judgment. In fact, Defendant appears to keep engaging in a prolonged pattern of evading the appropriate punishment imposed upon him.